(28 App. Div. 7.)

### WARREN v. UNION BANK OF ROCHESTER et al.

(Supreme Court, Appellate Division, Fourth Department.    March 26, 1898.)

1. INFANTS—MORTGAGES—GUARDIAN AD LITEM.

The supreme court can, in a proceeding to mortgage an infant's land to pay a debt, under Code Civ. Proc. § 2348, make the attorney of the creditor the special guardian of the infant.

2. SAME.

A mortgage of an infant's land, consummated by proceedings under Code Civ. Proc. §§ 2348, 2364, is not void because the report of the special guardian under oath, required by section 2356, showed that the contract made with the proposed mortgagee was an oral one.

3. SAME—COLLATERAL ATTACK.

In the absence of proof of fraud, the decision of the supreme court, in a proceeding to mortgage an infant's land, under Code Civ. Proc. § 2348, to pay a debt, is conclusive, when collaterally assailed, though it erroneously decided that the infant owed the debt, where in fact it was due from his guardian individually.

4. SAME—ADVANCEMENTS BY GUARDIAN.

A general guardian, advancing his own money for such expenditures for the ward's benefit as the court would have approved of if an application therefor had been made, is entitled to be reimbursed from the funds realized by a mortgage on his ward's land, under Code Civ. Proc. § 2348, authorizing such mortgage to pay debts.

Appeal from special term, Monroe county.

Action by Haskell B. Warren, an infant, by Edward P. Coyne, his guardian, and the said Edward P. Coyne as general guardian of the said infant, against the Union Bank of Rochester and others. Judgment for plaintiff, and defendants appeal. Reversed.

The action was commenced May 21, 1896. At that time the plaintiff was an infant of the age of 11 years. The complaint alleged that in the month of February, 1895, the plaintiff was the owner of certain real estate in the city of Rochester; that the defendant Holmes B. Stevens was his general guardian; that the guardian for some years had carried on the business of a brewer at a brewery upon the plaintiff's premises; that in carrying on the business he had borrowed money of the defendant the Union Bank of Rochester, and given promissory notes therefor signed by himself as general guardian of the plaintiff; that the business was carried on by the guardian in the name of the infant without authority, and the debt for the money loaned was the debt of the guardian individually, and not that of the plaintiff; that in the month of February, 1895, Stevens, as general guardian, presented a petition to the supreme court setting forth the existence of the indebtedness to the Union Bank in the sum of $24,500 and upward, and praying that the said real estate might be mortgaged for the payment of the debts; that such proceedings were had that a special guardian of the infant was appointed, and thereafter, in the name of the infant, executed and delivered to one Gilman H. Perkins a mortgage upon the real estate of the plaintiff, which was duly recorded in Monroe county clerk's office, for the sum of $25,000 and interest thereon, payable one year from date, and that Perkins assigned the said mortgage to the Union Bank; that Perkins paid the special guardian the sum of $25,000, and the special guardian, after taking out certain expenses, applied the balance of the money to the payment of the debt to the Union Bank; that the proceedings to mortgage the real estate of the plaintiff were undertaken pursuant to an agreement between the said Holmes B. Stevens and the Union Bank for the purpose of discharging said indebtedness; that Perkins paid the money to the Union Bank under an agreement that the same, or the net proceeds thereof, or what should be necessary, should be applied to discharge the debt to the Union Bank, and that the bank should refund to Perkins, who was a director and vice president of the said bank,

the moneys so paid by him, and the assignment of the mortgage to the bank was made in pursuance of that arrangement; that the plaintiff was without means to pay said mortgage; and that there was a prior incumbrance by mortgage upon his real estate for $60,000. Judgment was demanded that the mortgage should be declared null and void, and canceled of record, and that the proceedings in the supreme court resulting in the execution of such mortgage be set aside and vacated "as unadvisedly made and granted by this court," and for further relief.

The defendants answered, alleging that the proceedings that were attacked in the complaint as invalid were valid. The issues were tried at the Monroe equity term, and upon the trial the defendants' counsel moved to dismiss the complaint upon the pleadings, and upon the opening of counsel for the plaintiff (which was substantially a statement of the matters set forth in the complaint), upon the ground that the complaint did not set forth a cause of action; and (1) it neither questions the jurisdiction of the court which entertained and directed the proceedings referred to therein, nor the regularity nor their sufficiency; (2) if every fact stated in the complaint were true, it would not give the plaintiff any cause of action; and (3) there is no averment of fraud or collusion, imposition, mistake, or any other ground of equitable jurisdiction. The motion was denied, and the defendants excepted.

It appeared upon the trial that on the 27th of February, 1895, the defendant Holmes B. Stevens, as general guardian, presented a verified petition at a special term of this court held in the city of Rochester, by which it appeared that the plaintiff at that time was an infant of 10 years of age; that he was residing with his mother in Rochester, although they were then sojourning in Paris, France, for his better education; that on the 6th day of November, 1890, he (Stevens) had been appointed such general guardian by the surrogate of Monroe county; that Edward K. Warren was the paternal grandfather of the plaintiff, had carried on the brewery business upon a portion of the plaintiff's premises, and had died prior to May, 1888, leaving Harriet M. Warren his widow, and Edward C. Warren his son and only heir at law, and leaving a will by which he devised and bequeathed his property, real and personal, to his wife during her life, or until she should marry again, with remainder to the plaintiff, appointing his wife the sole executrix of his will, with power to sell his real estate for such prices as should be approved of by her and by Hiram L. Barker, of Rochester; that on the 10th of June, 1888, the widow, with the consent of Barker, conveyed by deed to Edward C. Warren, the father of the plaintiff, the brewery property for the sum of $38,000, subject to a mortgage of $37,000 held by the Rochester Savings Bank, and took security for the payment of the amount that Edward C. was to pay for the property in a mortgage upon the property, and in a few days thereafter the widow sold to her son Edward C. the personal property used in connection with the brewery for $15,000, and took his notes therefor; that in 1890 the widow died, and the petitioner was duly appointed administrator with the will annexed of the estate of Edward K. Warren, who at the time of his death was the owner in fee of the real estate covered by the mortgage in controversy; that, upon a sale of the brewery property to the son Edward C. Warren, he entered into possession of the property, and conducted the business of manufacturing ales and porter; that Edward C. mismanaged the business; that the petitioner brought an action against Edward C. Warren in the supreme court, as guardian ad litem for Haskell B. Warren (the plaintiff), to set aside the deed of the brewery premises, and the transfer of the personal property to Edward C. Warren, upon the ground that the sale to him was for a grossly inadequate consideration, and by collusion with his mother, with intent to deprive the plaintiff, Haskell B. Warren, of more than $100,000 of the value of the property; that that action was settled, Edward C. Warren transferring the personal property to the petitioner as administrator, which was substantially all the personal property belonging to the brewery property, including books of account, and the said Edward C. Warren also, in conjunction with his wife, by deed conveyed the brewery real estate to the plaintiff; that Edward C. received, as a consideration for these transfers, the sum of $8,000, which was paid to him out of the proceeds of certain mortgages upon plaintiff's real estate that had been executed under the authority and direction of the county court of Monroe county; that thereafter, and in November, 1891, the

petitioner, as administrator, had a final accounting before the surrogate of Monroe county, and that court made an order settling his accounts, and directed that all the property in his hands as such administrator be turned over to the petitioner as the general guardian of the plaintiff. The petition then sets forth the real estate and personal property of the infant; the incumbrances upon the real estate; the income from the real estate. The value of the real estate is stated at $198,000. The incumbrances by mortgage were $65,000, besides some accrued and unpaid taxes. The personal property, consisting of a bond and mortgage, household furniture, and notes due the brewery company, amounted to $3,143.03, and, in addition to that, the boiler, engine, piping, connections, etc., of the brewery and malt house, were called personal property, and valued at $6,229.99. Upon the settlement with Edward C. Warren, the petitioner went into possession of the brewery in 1891, and continued in possession and carried on the business until the 1st day of July, 1893, at which time the personal property used in the brewery business, including the good will of the concern, was sold to a corporation known as the "E. K. Warren Brewing Company," under the order and direction of the supreme court, and the petitioner received in exchange therefor $23,000 in the full-paid stock of the corporation; and the personal property, and the income of the real property, were insufficient to pay his debts; and the petition proceeds: "That, at the time of the transfer of the said brewery business to your petitioner by said Edward C. Warren, the estate and business were largely involved and very heavily in debt; that said business was conducted by your petitioner until the 1st day of July, 1893, when the same was sold and transferred to the E. K. Warren Brewery Company, as hereinbefore stated; that upon said sale no money was received by your petitioner, but the entire purchase price of said business was paid in the stock of the said E. K. Warren Brewery Company; that said stock was not, and is not now, salable, nor could your petitioner realize any money upon it; that the estate and business was at the time of such sale largely in debt, and it became necessary to raise a large sum of money to pay said debt; that your petitioner borrowed from the Union Bank of Rochester at divers times sums of money, aggregating about $24,500, for which loans he gave his promissory notes as guardian of said infant; that said Union Bank of Rochester has ever since carried said loans, and renewed said notes from time to time; that said Union Bank is now impatient for the payment of said obligation, and threatens to sue the same unless paid; that there are no other debts due from the estate except several small amounts, aggregating about one thousand dollars, a list of which is hereto attached; also certain back taxes, both city and county, which are unpaid: * * * that no dividend has been paid upon the stock of the E. K. Warren Brewery Company held by said infant; * * * that the infant has no debts or income except as aforesaid; that the interests of said infant will be substantially promoted by paying the debt of the Union Bank of Rochester, for, unless paid, the said bank will commence suit upon its said notes, and the said property of the said infant, both real and personal, will be sold and sacrificed to pay any judgment obtained by the Union Bank against the said infant in said action; that the income of said infant from said property is not sufficient to pay said indebtedness; * * * that Henry G. Danforth, residing at 535 West avenue, in said city of Rochester, who is not related to said infant in any manner, and who is a competent and suitable person to be appointed a special guardian for the purpose of making said mortgage, is willing to give security as such guardian by such a bond as the court may require [naming the sureties]." The petition prayed that the real estate of the plaintiff be mortgaged for the payment of the debt due to the Union Bank. Upon the filing of this petition the supreme court made an order that Mr. Henry G. Danforth, upon filing with the clerk of the court the bond as required by law in the sum of $50,000, with at least two sufficient sureties, freeholders of the state, who should justify, etc., be appointed special guardian with respect to the proceedings. The bond was filed and certified. Report was made to the court, and the court referred the matters set forth in the petition to a referee to inquire into the merits of the application; examine into the truths of the allegations; to hear the allegations and proofs of all persons interested in the property, or otherwise interested in the application; and report his opinion thereon, together with the testimony, with all convenient speed. The subsequent proceedings as to the reference, the

report of the referee, and the taking of testimony before the referee covering all the matters stated in the petition, were in conformity with the provisions of Code, §§ 2348–2357; as, indeed, were all the subsequent proceedings, resulting in the execution of the mortgage upon the plaintiff's real estate to secure the debt of the Union Bank, unless it may be in regard to the agreement entered into between the special guardian and Gilman H. Perkins, the purchaser; and as to that the special guardian reported that he had entered into an oral agreement with Perkins, subject to the approval of the court, for mortgaging the property for the sum of $25,000, payable in a year, with interest at 6 per cent., etc., with conditions as to insurance. This agreement was approved by the court, as was also the report of the referee, and, upon the sale of the premises, the court directed the execution of the mortgage. The special guardian executed and delivered the mortgage, and made his report to the court, which was duly confirmed and approved.

Upon the trial of this action it appeared, from the testimony given by the defendant Stevens and others, that after Stevens had obtained possession of the property in September, 1891, he conducted the business as it had been formerly carried on; that from the time it came into his hands he made efforts to sell or lease the property, and that he sold it as soon as he had an opportunity; that it was essential to the preservation of the brewery business, and for the protection of the interests of the infant, to carry on the business; that it was necessary to operate the real and personal property of the brewery together, in order to obtain income from the real and personal property, and to preserve the good will of the business; and that all the money obtained from the Union Bank was used necessarily in that business.

The court, in its findings upon this trial, found the facts substantially as set forth in the petition, and that the money obtained from the Union Bank was used in the brewery business, and found as a matter of law that the indebtedness represented by the note held by the Union Bank was the personal indebtedness of the defendant Stevens, and not an indebtedness of the plaintiff, Haskell B. Warren. He also found as a fact that Henry G. Danforth, at the time that he was appointed special guardian, was the attorney for the defendant the Union Bank. The trial court also held that the mortgage was void, and the assignment of it to the bank was void, and declared all proceedings had and orders made resulting in the execution of the mortgage void, and that the mortgage and the assignment thereof should be canceled, upon which decision judgment was rendered for the plaintiff.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN,. and WARD, JJ.

George F. Danforth, for appellants.
Charles J. Bissell, for respondent.

WARD, J. An elaborate statement of facts seemed to be necessary to fully present the interesting and important question which we must consider upon this review. The judgment appealed from assumes in a collateral proceeding, in an independent, original action, to overturn and declare void the acts and decisions, orders, and determination of the supreme court in a proceeding for the sale of infant's real estate, and we must consider under what circumstances this may be done. The supreme court has no inherent jurisdiction to direct the sale of an infant's real estate, but its jurisdiction rests upon the statute. Code Civ. Proc. §§ 2348–2364, inclusive; Losey v. Stanley, 147 N. Y. 570, 42 N. E. 8, and cases cited. The proceedings assailed in this case show that the petition upon which they are based gave the court jurisdiction. It was framed under section 2348 of the Code, which provides that real property belonging to an infant may be mortgaged as prescribed in the following subdivisions:

"(1) Where the personal property and the income of the real property of the infant  *  *  *  are together insufficient for the payment of his debts, or for the maintenance and necessary education of himself and of his family. (2) Where the interest of the infant  *  *  *  require or will be substantially promoted by such disposition on account of the real property  *  *  *  be exposed to waste or dilapidation or being wholly unproductive, or for the purpose of raising funds to preserve or improve the same, or for other peculiar reasons or on account of other peculiar circumstances."

By section 2349, the application shall be made by a petition of a general guardian, or the guardian of the property of the infant, and, if the infant is of the age of 14 years, he must join in the petition. That jurisdiction given by this petition is not questioned upon this appeal, nor was it upon the trial, by the learned trial judge, who states in his opinion that the petition did give jurisdiction; but it is claimed by the learned counsel for the respondent that matters subsequent to the petition invalidated the proceedings, and that fraud was established sufficient to justify the action of the trial court in this case. It is claimed that the proceedings were void because Danforth was the attorney for the bank at the time that he was appointed special guardian. It is not claimed that any act or omission of his was detrimental to the plaintiff in the proceedings to mortgage the real estate, or that he is not responsible, or that his bond was insufficient; or that in the particular matter in which he acted as such guardian he acted in the double capacity of special guardian and attorney for the bank. The fair inference from the finding of the court is that he was generally the attorney for the bank, and fraud on his part will not be presumed from the bare statement that he was such attorney, and, while such an appointment was perhaps unwise and subject to criticism, it was not sufficient to oust the court of jurisdiction.

In Battell v. Torrey, 65 N. Y. 296, the grandfather of the infant petitioned for the appointment of himself as the special guardian for the infant, for the purpose of selling or mortgaging the infant's land, who was also, as he claimed, the creditor of the infant, and his claim against the estate of the infant grew out of advances made and liabilities incurred by him, not as a guardian, or by any authority whatever, but as a volunteer in defending a litigation over the estate of the infant, and the sale or mortgage was asked for to pay for such advances. This state of facts was urged as a reason for vitiating the proceeding, but the court said that, while this "state of things requires the exercise of uncommon care on the part of the court in supervising the proceeding," it did not raise a jurisdictional question; that the court in that regard acted judicially, and, if it decided erroneously or made a mistake as to any other matter submitted to its consideration not involving its jurisdiction to do or omit to do or authorized to be done, cannot be questioned except by appeal, or in a direct proceeding to set aside or vacate what has been erroneously done.

Section 2360 of the Code provides that from the time of the filing of the petition "the infant is considered a ward of the court with respect to the real property or interest and the income and proceeds thereof." So that the court exercises constant supervision over every step in the proceeding. Through its own officer it takes the proof,

and, if a case is made out by competent proof, the special guardian is directed to contract; that contract is submitted to the court, under the oath of the guardian, which the court must approve, and direct a conveyance. The proceedings are not then ended. When a conveyance is made, either by deed or mortgage, a final report is made to the court, and the sale must be confirmed.

The proceedings are also objected to because the report of the contract made by the special guardian, and under oath, establishes that the contract made by the purchaser was an oral one; and we are cited to the case of Hardie v. Andrews, 13 Civ. Proc. 413–417 (a special term decision), in which the court intimated that under section 2356, Code Civ. Proc., the agreement should be in writing, although it was not necessary under the Revised Statutes that it should be, and, as the proceeding that the court was then considering was under the Revised Statutes, the intimation referred to, while entitled to great respect, was obiter; but the court did not hold there that a verbal contract, consummated by a conveyance, and all of the provisions of the contract carried out through the orders of the court, would avoid the proceedings or devest the court of jurisdiction, and we regard it as a mere irregularity. But collusion is charged between the officers of the bank and the general guardian, and that it was substantially agreed in advance that the proceedings were to be taken to mortgage the plaintiff's real estate for the payment of the debt of the bank, the claim being that there was no valid debt against the plaintiff, but that it was against the guardian, the defendant Stevens, individually; but bad faith is not charged, and the fraud that will devest jurisdiction could not exist without it.

The learned counsel for the respondent in his able brief makes this statement:

"In discussing the question whether the necessary result of the facts alleged in the complaint, and proved or admitted upon the trial, was to work a grave injustice and culpable fraud upon the infant, it is unnecessary for the plaintiff's counsel to charge the general guardian or the officers of the bank or any of the persons connected with the proceeding in question with any sinister purpose or actual fraudulent intent. It may well be, and judging from their reputation probably is, the fact that all fully believed that the infant actually owed the debt, and they were actuated by no other purpose than to secure the bank for a debt which it manifestly believed the infant owed."

The question was fairly before the supreme court, when the proceedings to mortgage the real estate were considered and disposed of, whether this charge of collusion was true, and whether the bank had not a just and equitable claim upon the plaintiff and his property that could be enforced in that proceeding under the broad grant of power given to the court by section 2348 of the Code. There was no dispute but what the bank advanced the money to the guardian, or that the guardian used it in the business and concerning the property of the plaintiff, or that the guardian kept it separate from his own, or that the parties believed that the best interests of the infant were subserved by the transaction. We must remember that these transactions occurred at a time of great business depression, when very little property was being operated at a profit; when the infant was too young to be consulted; when he was actually living in a foreign

country; and when the delicate business of the guardian required him to exercise his best judgment in the situation in which he was placed. There is no suggestion that the guardian in any manner profited out of this business. It does appear that portions of this money were used to relieve the real estate of the infant from incumbrances, taxes, interest, and charges. There was not an accounting by the guardian before the supreme court in either proceeding, nor is there any suggestion but what the guardian is responsible, and his bond amply sufficient to cover any losses that may come to this infant on account of mismanagement by the guardian of his property or any·loss growing out of his negligence. The conclusion of the supreme court was that in equity the plaintiff's land should be charged with this debt, and, in the absence of fraud, that decision was res adjudicata and conclusive, and cannot be interfered with in this action. Actual fraud is not claimed, but from the transaction constructive fraud is alleged, because the court decided wrong upon a question of fact. This is not sufficient, even on a bill for review. Webb v. Pell, 3 Paige, 368.

Judge Andrews said in Hyland v. Baxter, 98 N. Y. 614:

"The principle of res adjudicata supports the conclusiveness of a judgment when the same matter is subsequently called in question between the parties in a collateral action, whether the question was rightly or wrongly decided, on the principle of quieting contentions and securing the orderly administration of justice."

In Ross v. Wood, 70 N. Y. 10, 11, Judge Allen said:

"The fraud which will justify equitable interference in setting aside judgments and decrees must be actual and positive, and not merely constructive. It must be that which occurs in the very concoction or procuring of the judgment or decree, and something not known to the opposite party at the time, and for not knowing which he is not chargeable with negligence."

And again he said at page 11:

"Equity will not take cognizance on the same ground of the very point of which another court of competent authority in the case has considered and decided."

And again:

"And the rule should not be relaxed to retry questions deliberately tried and adjudicated by courts of equity having concurrent jurisdiction of the subject-matter."

Section 2358, Code Civ. Proc., provides:

"A mortgage * * * made in good faith as prescribed in this title upon an application in behalf of the infant * * * has the same validity and effect as if executed by the person in whose behalf it was executed and as if the infant was of full age."

The rule referred to is sustained by the following cases: Smith v. Nelson, 62 N. Y. 286; Stillwell v. Carpenter, 59 N. Y. 423; Ward v. Town of Southfield, 102 N. Y. 287, 6 N. E. 660; Mayor, etc., v. Brady, 115 N. Y. 599, 22 N. E. 237, and cases cited.

It is a principle well established in equity jurisprudence that a trustee (and it is held that a guardian is such) who, acting in good faith, makes expenditures of the funds of the cestui que trust, for the benefit of the property of the cestui que trust, or to pay off incumbrances or taxes upon the property which, if not paid, might consume the prop-

51 N.Y.S.—3

erty incumbered, or if he does any act in advance of an order of the court which the court would have originally directed, the transaction will be sustained as in the interest of the cestui que trust. Noyes v. Blakeman, 6 N. Y. 567; New v. Nicoll, 73 N. Y. 127, 131. At the latter page the court says:

"When a trustee is authorized to make an expenditure, and he has no trust funds, and the expenditure is necessary for the protection, reparation, or safety of the trust estate, and he is not willing to make himself personally liable, he may, by express agreement, make the expenditure a charge upon the trust estate. In such a case he could, himself, advance the money to make the expenditure, and he would have a lien upon the trust estate, and he can by express contract transfer this lien to any other party who may, upon the faith of the trust estate, make the expenditure."

This the guardian of the plaintiff attempted to do through his arrangement with the bank.

These propositions are amply sustained by Randall v. Dusenbury, 39 N. Y. Super. Ct. 174, affirmed 63 N. Y. 645, and by Perry, Trusts, § 476, where that author says:

"But there are circumstances where a trustee must exercise the discretionary powers of an absolute owner; otherwise great loss might happen to the estate. The exigencies of the moment may demand immediate action. The cestui que trust may be numerous or scattered or under disability. * * * The alternative of applying to the court may be attended with considerable or disproportionate expense, and perhaps delay, so that the opportunity is gone and lost forever. It is therefore evident that it is for the interest of the cestui que trust that the trustee should have a reasonably discretionary power, to be exercised in emergencies, though no such power is given in the instrument of trust. And so it is a rule of equity that a trustee may safely do that without a decree of the court which the court, on a case-made, would order or decree him to do."

As to whether the plaintiff (an infant) was bound by the act of his guardian, see Thompson v. Railway Co., 168 U. S. 451, 18 Sup. Ct. 121.

It is not necessary to consider whether there could be a recovery in a legal action brought by the bank against the plaintiff upon the note that evidenced the debt due to the bank. It is sufficient, for the purposes of the proceeding that is assailed in this action, that, under the circumstances, there was an equitable obligation from the plaintiff to reimburse the bank for its advances at the request of his guardian in the business of the plaintiff. At least, that question was fairly before the supreme court in that proceeding, and its determination should not be overthrown in this collateral action. The provisions of the Code are broad enough to permit the mortgaging of the plaintiff's real estate to meet his equitable obligations. If, as between him and his guardian, he has been wronged in the proceeding, his redress must be against him in an appropriate proceeding. The cases cited by the learned counsel for the respondent do not aid us. In Bank v. Ritchie, 8 Pet. 128, there was a bill of review to set aside a conveyance made in a proceeding in chancery to sell infant's real estate under the laws of Maryland. The bill of review was under the chancery practice, and not a collateral proceeding. A bill of review is in the nature of a writ of error, and its object is to procure an examination and alteration or reversal of a decree made upon a former bill, which decree has been signed and enrolled. 2 Barb. Ch. Prac. 90, and cases cited. But there were radical errors in that case apparent upon

the face of the decree.    A guardian ad litem had been appointed on motion of plaintiff's counsel without bringing the minors into court. The insufficiency of the personal estate was not proved, and the guardian simply put in an answer which was not under oath, admitting the petition.    In Ellwood v. Northrup, 106 N. Y. 172, 12 N. E. 590, there was no reference to a referee to inquire into the merits of the application as required by statute, nor was the court informed as to the value and situation of the land, the reason of the sale, the name of the intended purchaser, the price to be paid, and other jurisdictional defects. In Re Valentine, 72 N. Y. 184, there was no reference as required by the statute, and there was no hearing of the parties interested, and no report to the court.    It is important to the permanence and security of judicial proceedings that they should be sustained when the court has acted within its jurisdiction, and not permit other actions to assail and destroy those proceedings, except in a clear case and for grave reasons.    We are satisfied that the supreme court, in directing the mortgaging of the plaintiff's property, acted within its jurisdiction, and that the decision of the trial court which we are now reviewing was erroneous.    The courts in this and in our sister states have, with the greatest strictness, sustained proceedings within the jurisdiction of the court from collateral attacks.    In addition to the cases cited, we refer to the following:  In Bellamy v. Thornton (Ala.) 15 South. 831, it was held that where a guardian uses his own funds to support his wards, under such circumstances that an order for the sale of their lands would have been granted for such purposes if it had been applied for in advance, a sale of sufficient of such real estate to reimburse him will be ordered.    And it was held in Williams v. Pollard (Tex. Civ. App.) 28 S. W. 1020, that where a ward's land is sold on a proper petition to the probate court, and under its decree, it will be presumed the necessary evidence was introduced.  In Daughtry v. Thweatt (Ala.) 16 South. 920, it was held that a guardian's sale of land after the court had jurisdiction is not void on collateral attack, on the ground that the order of sale was made without notice to the ward, etc.    And in Myers v. McGavock (Neb.) 58 N. W. 522, it was held that a decree of sale could not be attacked collaterally, on the ground that the guardian's appointment was not properly shown, or that notice of the order of confirmation of sale was not properly given.    And see, also, Decker v. Fessler (Ind. Sup.) 44 N. E. 657, and Eliason v. Bronnenburg (Ind. Sup.) 46 N. E. 582.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.    All concur.