O'BRIEN v. JACKSON et al.

(Supreme Court, Appellate Division, First Department. June 30, 1899.)

1. EXECUTORS—BUILDING CONTRACT—LIABILITY OF ESTATE.
   Executors authorized by the will to keep buildings of the estate in good repair, and to rebuild, if necessary, contracted, in their representative capacity, for repairs on buildings of the estate which were old and out of repair, deeming such repairs necessary and beneficial to the estate. *Held*, that the cost of the repairs was a charge against the trust estate.

2. PAYMENT—RECEIPT—CONCLUSIVENESS.
   In an action to recover a balance on a contract to repair buildings, and for extras, it appeared that the owner had, during the progress of the work, made a payment to the contractor, for which the latter had receipted as being a payment for extras to date, in addition to a payment on the contract. The entire sum paid was credited as a payment on account of the contract. *Held*, that the receipt did not bar a recovery for extras furnished before it was given.

3. APPEAL—REVIEW—CONFLICT OF EVIDENCE.
   A verdict on conflicting evidence will not be disturbed.

4. BUILDING CONTRACT—ACTIONS—INSTRUCTIONS.

In an action for a balance due on a building contract and for extras, some of which were for variations from the plans, it appeared that the architect under whose supervision the work had been done, and for whose certificate that the work had been completed the contract stipulated, had certified that the contract had been performed, and all but a very small balance of the price had been paid. The court charged that, with respect to work under the original contract, it should be completed in every particular, and that the jury might deduct the difference in value from any variations in the contract. *Held*, that the charge, considered as a whole, was not erroneous, the latter part merely referring to disputed extras.

5. SAME—EXTRAS—QUESTION FOR JURY.

Where specifications for a building did not designate the kind of cocks to be used in the piping, and the owner required the contractor to use a certain kind, and there was a dispute whether such kind was more expensive than a certain other kind, which it was testified were intended to be used, the question whether the cocks used by the owner's direction were extras, entitling the contractor to recover the increased cost in ·addition to the contract price, was for the jury.

6 SAME.

Where building specifications provided for "small washout closets," and at the owner's request the contractor used patented closets not known in the trade by that name, and concerning which it was testified that they were more expensive than those named in the specifications, the question whether they were extras, for which the contractor was entitled to recover the extra cost, was for the jury.

7. SAME.

The question whether a building contractor was entitled to recover for hot-water piping and labor performed in placing it,·as for extras, is for the jury, where there is evidence that the location of the pipes was changed from that set forth in the specifications. so as to require additional pipes and labor.

8. EXECUTORS—LIABILITY FOR COSTS.

Code Civ. Proc. § 1836, authorizing the awarding of costs against an executor only where the claim on which the suit is brought was presented to him as required by law, and he neglected to pay or to offer to refer it, does not apply to an action against an executor and testamentary trustee on a contract made by him after testator's death.

Appeal from trial term, New York county.

. Action by Michael J. O'Brien against Henry H. Jackson and others, as executors and trustees. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

The action was brought to recover for plumbing alleged to have been done by the plaintiff, pursuant to an agreement with the defendants, in five houses situate on Third avenue and East Seventy-Fourth street, belonging to the estate of Peter A. H. Jackson, deceased. The complaint, after alleging that the. defendants were executors and trustees under the will of Peter A. H. Jackson, and as such were duly authorized to contract with the plaintiff, as thereafter set forth, states two causes of action: First, to obtain a balance of $95, with interest alleged to be due for work completed in accordance with a written agreement between the parties (annexed to the complaint), on which agreement $15,300 had been paid; and a second cause of action to recover $624.25, with interest, in payment for additional work alleged to have been done at defendants' request, as shown in a schedule, also made part of the complaint. The defendants' amended answer admits that the defendants were executors and administrators, but denies that they were authorized to make the contract. or that it was completed, or that the defendants requested additional work. In addition, the answer contained a counterclaim. To the counterclaim the plaintiff replied by denial, and by assertion that deviations from the contract were at defendants' request. The issues involved were submitted to a

jury, and it is from the judgment entered on such verdict that this appeal is taken.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Edward W. S. Johnston, for appellants.
Thomas C. Ennever, for respondent.

O'BRIEN, J. The defendants were named as executors and trustees under the will of Peter A. H. Jackson, deceased, which provided that the estate was to be held and managed by them for the benefit of his children, and they were directed "to pay and discharge, from time to time, all taxes and assessments" on the property, "and keep the same insured, and in good repair and condition, if damaged rebuilt, while held in trust by them." In their agreement with the plaintiff, dated August 14, 1896, the defendants signed and executed it as "executors and trustees under the last will and testament of Peter A. H. Jackson." On the opening of the trial, and again on this appeal, it was insisted that the complaint did not state, and neither did the proofs establish, sufficient to constitute a cause of action against the defendants, as executors and trustees or in their representative capacity, but only against them as individuals. In support of this contention, we are referred by the appellants to a long line of authorities, in which it has been held "that a debt contracted by an executor or administrator as such, and for the benefit of the estate which he represents, only binds him individually, and does not bind the estate." The reason for the rule is well stated in Van Slooten v. Dodge, 145 N. Y. 327, 39 N. E. 950: "An executor cannot subject the estate in his hands for administration to some new liability, either by his contract or by his wrongful act." Even this general rule is subject to exceptions, where express authority is given by the will which requires expenditures to be made in the course of administration to preserve the estate. Willis v. Sharp, 113 N. Y. 586, 21 N. E. 705. The distinction between administrators or executors and trustees is important. Ordinarily, the only duties resting on an executor or administrator are to take possession, collect assets, pay debts, and retain the estate for distribution; all of which the statute assumes can be done in 18 months, except in special cases, when a longer period is required. They have nothing to do with the real estate. The duties of trustees usually are more extensive, more onerous, more responsible, and cover a longer period, and to them, where real estate is the subject of the trust, are committed its care, preservation, and management. Their right and authority are therefore greater, and, in considering the power of representatives of an estate to make contracts and charge the trust estate, the distinction between an executor and trustee must always be kept in mind. With respect to trustees, "the general rule undoubtedly is that a trustee cannot charge the trust estate by his executory contracts, unless authorized to do so by the terms of the instrument creating the trust. Upon such contracts he is personally liable, and the remedy is against him personally. But there are exceptions to this general rule. When a trustee is authorized to

make an expenditure, * * * and the expenditure is necessary for the protection, reparation, or safety of the trust estate, and he is not willing to make himself personally liable, he may, by express agreement, make the expenditure a charge upon the trust estate." This statement of the rule and the exceptions, with the cases supporting them, are fully discussed in Mulrein v. Smillie, 25 App. Div. 1351, 48 N. Y. Supp. 994, which is an authority upon which the appellants confidently rely. It was therein held, on demurrer, that there could be no recovery against the estate, unless the complaint alleged an agreement between the trustees and the plaintiff that the expense of the repairs should be a charge on the estate. The complaint here alleges that the defendants, as trustees, were authorized to, and as such did, make the contract, which is given in full, and which expressly covenants to bind them as executors and trustees, and their successors, and by its terms and conditions leaves no other reasonable inference than that the purpose and intent were to render themselves liable in a representative character and to charge the trust estate. This inference is emphasized by what appears throughout the time of performance, tending to show that the work was regarded as for the estate. Thus, the receipts taken show payments from the estate.

The real point, therefore, is, were the defendants authorized to make the contract? Undoubted power was given to them, under certain contingencies, to rebuild such building or buildings as would be, in their opinion, beneficial to the estate; and it was within their right to determine when the damage was such as to make it proper to exercise their power to rebuild. That the original buildings were old and out of repair, and that the defendants deemed it wise and beneficial to rebuild, was made to appear. Moreover, the answer did not deny such authority, though the amended answer may be said to have raised the question; but upon the stand Mr. Jackson, the trustee, stated that he understood he had a right to improve the property, and build on it, and to make the contract which he made. The power having been given to rebuild if necessary, and the trustees deeming the expenditure necessary for the protection and safety of the trust estate, and having by express agreement charged themselves in a representative capacity, they have made such expenditures a proper charge against the trust estate. Warren v. Bank, 28 App. Div. 19, 51 N. Y. Supp. 27.

This contract provided that the materials necessary should be furnished, and the work done, in accordance with the specifications, on or before November 1, 1896, in a good, workmanlike, and substantial manner, to the satisfaction and under the direction of the architect, certified by his writing or certificate. Bearing directly on the question of performance, besides the testimony of the plaintiff that all the work was completed in a satisfactory manner, we have the certificate of the architect, which it was stipulated should be given. The work also received the approval of the building department. A material defect shown was in the clogging of the pipes, but this was offset by the plaintiff's statement that the pipes were clear when he left the job. Allegations in the answer as to uncompleted work do

not coincide with the specifications. Thus, "chain stays" and "cock nozzles" do not appear in the specifications. The dispute, therefore, relates to conceded substitutions made, and the extent and amount of extra work, and by whom authorized.

Upon this question of authority, we have testimony tending to show that each item was expressly ordered or suggested. The architect says he ordered some, and we have letters covering other items included in the charge for extra work. This testimony was contradicted by the defendants, and the question was submitted to the jury. The appellants contend, however, that the receipt dated December 28th shows that it was accepted in full payment of all extra work done prior to that date, and they dispute alleged extra work done thereafter. This receipt was for the third payment in advance, by request, and purports by its terms to be a receipt also for extra work to date. Just when the extra work in the schedule annexed to the complaint was done is not clearly shown, although some of the items are dated; and, as the amount of $1,500 has been credited to payment of the $15,300 on the contract work, it was necessary, for the purpose of an adjustment, that all items should be taken into consideration, and a balance obtained. So proceeding, it remains to inquire into the nature and amount of the claims for extra work.

The plaintiff testified that, in cases where extra charge was made, the figures were for the difference in price allowed for by the contract and the articles furnished and work done. Thus, with regard to "Fuller cocks," we have a letter from the firm from which they were purchased, stating that $154 was the difference in price. So, also, with regard to the closets, it was stated that the Climax closet was a patented article, not known in the trade as "small washout closets," as named in the specifications, and the item is for the difference in price. That there were substitutions of items for those in the specifications is evident. One-half instead of five-eighths inch pipe was furnished, and different iron riser pipes were put in, and changes were made in the bath tubs and sinks. The plaintiff testified that the necessity of making certain changes was called to the attention of the defendants, and that they assented to such changes, and agreed to receive, and did receive, therefor an allowance, where there was a difference in the cost or value. Both the architect and one of the defendants, Jackson, were present daily superintending the work, and they had the opportunity to object, had they seen fit, to any deviations or changes from the specifications. The conflict arising on these items was submitted to the jury, and the verdict shows that as to some they made deductions from the plaintiff's claims. It would exceed the limits of an opinion to discuss each item, its cost, whether authorized, or whether included in the specifications. There was a sharp conflict on most of them, and just what ones were allowed and what ones rejected by the jury it is neither possible nor necessary to determine, and, unless there were errors in the charge, their verdict should not be disturbed.

An objection is taken to that part of the charge in which the court said that the jury might deduct the difference in value of any variations from the contract. What the judge undoubtedly had then

in mind was the extra work and the matter of substitutions; for he charged, with respect to work under the original contract, that it should be "absolutely completed in every particular." Considering the charge as a whole, and taking into consideration the fact that the plea of substantial performance was supported both by the architect's certificate and by the fact that $15,300 on a $15,395 contract had been paid, the instruction which was given, and which is now complained of, was intended to guide the jury in their consideration of the dispute over extra work, and, so considered, it was not erroneous.

Another objection urged is to the refusal to charge that the plaintiff was not entitled to recover items (Fuller cocks instead of T-handle cocks, pipes for hot-water tank, and Climax closets) for alleged extra work performed, because such items were covered by the specifications. Whether such were intended by the specifications was not apparent, and upon each item there was, as already said, close and conflicting testimony. Thus, the specifications speak of "cocks," not Fuller cocks; and it was testified that ordinary T-handle cocks were intended, and that Fuller cocks were of greater cost. On the other hand, there was testimony that the Fuller cocks were no more expensive. A question of fact was thus presented for the jury, since Fuller cocks were not specifically mentioned in the specifications; they were ordered by special letter, and the firm from whom they were purchased said the cost would be greater. The same may be said with regard to the Climax closets. The specifications merely mention "small washout closets"; and it was testified to that the Climax closets were not known in the trade by that name, but were a patented article, and more expensive. Finally, as to the hot-water pipes, it was testified that the location was changed from that set forth in the specifications, requiring additional pipe and labor.

It is contended, further, that it was error for the court to grant an extra allowance and costs against the defendants, as executors and trustees, for the reason that the plaintiff recovered $100 less than the original claim, and failed to present proof of presentation of claim, or an offer to refer and refusal of the defendants. The provisions of the Code upon the subject of costs in actions against executors have no application to a case like the present, wherein the claim or right of action is one against the trustees on a contract made by them after the death of their testator.

The judgment should be affirmed, with costs. All concur.