ROGER H. MCGLYNN, PLAINTIFF-RESPONDENT, v. PARKING
AUTHORITY OF CITY OF NEWARK,
DEFENDANT-APPELLANT.

MICHAEL A. BACKER, PLAINTIFF-RESPONDENT, v. PARKING
AUTHORITY—CITY OF NEWARK, DEFENDANT-APPELLANT.

Argued November 17, 1980—Decided July 14, 1981.

552

William *Pollinger* argued the cause for appellant (*Donald B. Kaufman*, attorney; *William D. Giovine*, on the brief).

*Kevin L. Kelly* argued the cause for respondent *Roger H. McGlynn* (*Lum, Biunno & Tompkins*, attorneys).

*Michael A. Backer* argued the cause pro se.

*Michael Sternlieb* submitted a brief on behalf of *amicus curiae* The Newark Parking Association, Inc. (*Rusch, Litt & Sternlieb*, attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

The primary issue in this case is whether the operator of an enclosed park and lock garage is liable for theft of property from and damage to a car parked in the garage. A further issue is whether under these circumstances proof of damage or loss creates a presumption of negligence.

Plaintiffs, McGlynn and Backer, parked their cars in the Military Park Garage operated by the defendant, Parking Authority. While the cars were parked, vandals damaged the cars and stole property from them. Both McGlynn and Backer recovered judgments in the Essex County District Court, and the Authority appealed. We granted direct certification of both appeals. 84 *N.J.* 412–413 (1980). We affirm both judgments.

I

Military Park Garage is a cavernous underground parking facility in the center of Newark. The garage has three levels of underground parking with several entrances for cars and additional entrances and exits for pedestrians. On entering, a driver receives a printed ticket from a machine. Drivers park in any available space, lock their automobiles and retain the keys. To exit, a driver must stop the car at a toll booth, present the ticket and pay the parking fee.

The facts in both cases are similar. Both McGlynn and Backer drove their cars to the garage and received tickets from the dispensing machine. Neither McGlynn nor Backer read the tickets or knew what was printed on them. On the morning of December 7, 1977, McGlynn parked his Mercedes-Benz convertible on the second underground level, locked it and took his keys. Upon returning in the afternoon, he discovered that someone had slashed the convertible top and had stolen his portable cassette recorder together with forty cassettes. The recorder had been located in the cradle between the two front seats, and the cassettes had been stored in a plastic container located on the floor behind the front seat. In the evening of October 30,

1977, Backer parked his 1972 Datsun 240Z on the first underground level. When he returned the next morning, four hubcaps were missing and the antenna was broken. Both McGlynn and Backer reported the incidents to employees of the Authority. McGlynn was not charged for parking in the garage. Backer completed a claim form and returned it to the Authority. Both McGlynn and Backer asserted that the Authority had breached a bailment contract with them and that its negligence had caused their damage.

During his trial, McGlynn testified that he had never seen a security guard in the garage, but that he had parked in the garage because he thought it would be safe. In both cases, the only witness for the Authority was the supervisor of the garage. In *McGlynn*, the supervisor testified that the security procedures in effect on the day of the incident included the patrolling of three levels and stairways by garage attendants and city police, as well as the deployment of at least two attendants on each level of the garage. He conceded that there had been prior incidents of theft and vandalism. In *Backer*, the supervisor had not been in the garage while Backer's car was parked. Nonetheless, he testified that during the period when Backer's car was parked there would have been one or two attendants on duty and Newark Police would have been patrolling the garage.

In both cases, the Authority attempted to introduce into evidence the limitation of liability clause allegedly found on the tickets. The trial judge would not allow the tickets to be introduced because the Authority had not pleaded limitation of liability as an affirmative defense.

In *McGlynn*, the trial judge found that a bailment existed and instructed the jury that upon proof of damage, a presumption of negligence arose. The jury returned a verdict of $1,050.

In *Backer*, the same judge, sitting without a jury, found again that a bailment existed and that a presumption of negligence arose upon proof of damage. The court determined that the presumption established a *prima facie* case that was not rebut-

ted by the Authority. Accordingly, the court awarded Backer damages of $150.

## II

Traditionally, courts have analyzed parking lot or garage cases in terms of whether a bailment, license or lease relationship existed between the customer and the operator of the parking lot. Annot., "Liability for loss of or damage to automobile left in parking lot or garage," 7 *A.L.R.*3d 927 (1966). Depending on the characterization selected, a different standard of care was imposed upon the parking lot operator. *Id.* If the relationship was characterized as a bailment, proof of damage to the bailed goods created a presumption of negligence and established a *prima facie* case. *See, e. g., Bachman Chocolate Mfg. Co. v. Lehigh Warehouse & Transp. Co.,* 1 *N.J.* 239, 242 (1949) (proof of damage to cocoa beans stored in warehouse established *prima facie* case against bailee). The bailee could rebut this presumption by coming forward with evidence showing that the loss was not caused by his negligence or that he exercised due care. *Id.* If, however, the relationship was characterized as a license to park or a lease of space, the customer did not receive the benefit of the presumption. Consequently, the customer had the duty to prove affirmatively the negligence of the operator. *McFarland v. C.A.R. Corp.,* 58 *N.J.Super.* 449, 452 (App.Div. 1959).

In addition, under the traditional approach, even if the relationship between the garage operator and the parker were found to be a bailment, the contents of the vehicle would not necessarily be included within the bailment. To be included within the bailment, the contents had to be plainly visible or of a kind normally kept in a car. *See Cerreta v. Kinney Corp.,* 50 *N.J.Super.* 514, 517–518 (App.Div.1958); Annot., "Liability of owner or operator of parking lot or garage for loss of or damage to contents of parked motor vehicle," 78 *A.L.R.*3d 1057, 1069–1073 (1977).

Although McGlynn and Backer have relied partially on the contractual feature of a bailment, courts and scholars have disagreed on whether, in addition to possession and control, a contract is essential to the existence of a bailment. *Compare Cerreta, supra,* 50 *N.J.Super.* at 517 ("Bailments, except where created by operation of law or statute, rest in contract, express or implied in fact") *and Garfield v. Furniture Fair-Hanover,* 113 *N.J.Super.* 509, 512 (Law Div.1971) (bailments are contractual in nature), *with Zuppa v. Hertz Corp.,* 111 *N.J.Super.* 419, 423 (Cty.Ct.1970) ("It is the element of lawful possession, however created, and the duty to account for the thing as the property of another, that creates the bailment, regardless of whether such possession is based upon contract in the ordinary sense or not"); *see generally R. Brown, The Law of Personal Property* § 10.1 (3 ed. 1975); 1 *A. Corbin, Corbin on Contracts* § 121 at 520–522 (1963); 9 *S. Williston, Contracts* § 1030 (3 ed. 1967). The modern trend has been to deemphasize the contractual feature of the transaction and to emphasize the nature of the relationship between the parties when one transfers possession of goods to another. *Marsh v. American Locker Co.,* 7 *N.J.Super.* 81, 84 (App.Div.1950), aff'd o. b., 6 *N.J.* 81 (1950); *Zuppa, supra,* 111 *N.J.Super.* at 423; *R. Brown, supra,* § 10.2.

This Court, however, has never decided whether a bailment relationship exists between the operator of an enclosed park and lock garage and its customers. In related situations, lower courts have focused on the criteria of possession and control in determining whether the relationship was one of license, lease or bailment. *See, e. g., Hy-Grade Oil Co. v. New Jersey Bank,* 138 *N.J.Super.* 112, 116 (App.Div.1975), certif. den. 70 *N.J.* 518 (1976) (judgment for bank customer reversed and case remanded to determine if there was delivery of money to night depository of bank because "it is essential to the creation of a bailment that the property be turned over to the possession and control of the bailee"); *J.L. Querner Truck Lines, Inc. v. Safeway Truck Lines, Inc.,* 65 *N.J.Super.* 554, 561–563 (App.Div.1961), aff'd, 35 *N.J.* 564 (1961) (insufficient control to create bailment where truck

leased to corporation was driven by employee of lessor as directed by employee of lessee); *McFarland, supra* (no bailment when car owner parked and locked car in restaurant parking lot, did not pay a parking fee or receive a ticket, and retained keys); *Moore's Trucking Co. v. Gulf Tire & Supply Co.*, 18 *N.J.Super.* 467, 470–471 (App.Div.1952), certif. den. 10 *N.J.* 22 (1952) (bailment existed when trailer without tractor was stored in warehouse); *Marsh, supra,* 7 *N.J.Super.* at 84–86 (insufficient delivery and control to create bailment where package containing jewelry was deposited in locker at railroad station); *Kushner v. President of Atlantic City, Inc.*, 105 *N.J.Super.* 203, 211–212 (Cty.Ct.1969) (bailment found when hotel guest surrendered car and keys to hotel employee in exchange for claim ticket); 8 *C.J.S., Bailments,* § 15(a) at 360–362 (1962); 9 *S. Williston, supra,* § 1030 at 875–877.

In parking lot and garage cases, the relevant indicia of possession and control include whether the lot is enclosed, whether a claim ticket is issued, whether the claim ticket identifies the car or merely indicates time and date of entry, whether the parking is by an attendant or the automobile operator and whether the operator retains the keys. *See, e. g., Moore's Trucking Co., supra,* 18 *N.J.Super.* at 470; *Kushner, supra,* 105 *N.J.Super.* at 211. Parking lot cases, however, do not fit easily into the categories of license, lease or bailment. *See Wall v. Airport Parking Co.*, 41 *Ill.*2d 506, 508, 244 *N.E.*2d 190, 192 (1969) (no bailment where owner parked car in an uncovered park and lock lot at O'Hare Airport; "parking-lot cases do not readily lend themselves to precise categorization of whether the motorist is leasing space . . . or whether delivery of the vehicle . . . creates a . . . bailment"). *See also Marsh, supra,* 7 *N.J.Super.* at 84 (categorization becomes "troublesome as situations arise involving facts and considerations which depart from the traditional ones presented in earlier cases"). Courts throughout the country, and even members of the same court, have reacted differently in determining whether the facts presented demonstrated sufficient possession and control to categorize the rela-

tionship as a bailment. *See 1420 Park Road Parking, Inc. v. Consolidated Mut. Ins. Co.,* 168 *A.*2d 900 (D.C.Mun.Ct. 1961) (majority found no bailment in enclosed park and lock garage with automatic ticket dispenser over dissent that would imply bailment); *Central Parking System v. Miller,* 586 *S.W.*2d 262 (Ky.1979) (majority found no bailment in six-story park and lock garage with automatic ticket dispenser despite strong dissent that would imply bailment); *Taylor v. Philadelphia Parking Auth.,* 398 *Pa.* 9, 156 *A.*2d 525 (1959) (no bailment in monthly park and lock garage); *Scruggs v. Dennis,* 222 *Tenn.* 714, 440 *S.W.*2d 20 (1969) (implied bailment contract where car owner took ticket at entrance, parked and locked car and retained keys). This disagreement suggests that bailment is an outmoded concept for analyzing parking lot and garage cases.

Rather than consider possession and control in the context of a bailment, we believe it is more useful and straightforward to consider them in defining the duty of care a garage operator owes to its customers. Fairness and reason suggest that we abandon the quest for the elements of bailment and seek an adjustment of the rights and duties of the parties in light of the realities of their relationship. *See State v. Shack,* 58 *N.J.* 297, 307 (1971); *R. Brown, supra,* § 10.1 at 210. Thus, the indicia of possession and control must be analyzed, along with all other relevant circumstances, to determine the duty the operator owes to its customers. Our approach is consistent with those courts in other states that have discarded bailment, license and lease as ancient labels ill-suited for the analysis of problems like those posed by the present cases. *Ellish v. Airport Parking Co.,* 42 *App.Div.* 174, 179, 345 *N.Y.S.*2d 650, 655 (1973), aff'd o. b., 34 *N.Y.*2d 882, 316 *N.E.*2d 715, 359 *N.Y.S.*2d 280 (1974) (operator of airport self-serve parking lot found not liable for disappearance of car parked on lot absent proof of negligence because of the nature of the circumstances); *see Parking Management, Inc. v. Gilder,* 343 *A.*2d 51, 54 (D.C.App.1975) (en banc) ("Nor do we think mechanical labels should be applied to the relationship in 'park and lock' arrangements"; garage owner found liable for

breach of implied duty of reasonable care based on the expectations of the parker). *See generally Restatement (Second) of Torts* § 302B comment (e) (1965); *Restatement of Contracts* § 314 illustration (7) (1932).

■ Whether the garage operator is under a duty to take reasonable steps to prevent harm to the vehicles parked in the garage and to their contents depends, in large part, upon whether the risk of harm is reasonably foreseeable. *See Hill v. Yaskin,* 75 *N.J.* 139, 143 (1977); *W. Prosser, Law of Torts* § 43 at 250 (4 ed. 1971). In a related area, we have imposed liability on landlords for failing to take reasonable measures to protect their tenants from the foreseeable criminal conduct of others. *See Trentacost v. Brussel,* 82 *N.J.* 214, 223 (1980) ("[f]oreseeability of harm . . . is the crucial factor in determining 'whether a *duty* exists to take measures to guard against [criminal activity]' "); *Restatement (Second) of Torts, supra,* §§ 302B, 448. Imposing a duty of reasonable care on the operator of an enclosed garage to protect cars and items reasonably expected to be within those cars is consistent with *Trentacost.* In the present cases, the Authority knew of prior incidents of vandalism; the Authority also controlled access to the parked cars. The prior incidents of vandalism indicated the foreseeability of the risk that criminal acts of others would cause harm to the automobiles and their contents. This foreseeable risk of harm extended not only to the parked cars, but to all items that the garage operator would reasonably expect to find within the cars.

■ Ultimately, however, the imposition of a duty depends upon policy considerations such as the effect of the imposition of the risks and burdens of an activity. 2 *F. Harper and F. James, The Law of Torts* § 18.6 at 1052 (1956). In comparison with a parker, the garage owner is better situated to protect a parked car and to distribute the costs of protection through parking fees. Furthermore, at an enclosed garage, car owners expect to receive back their cars in the same condition in which they left them. The imposition of a duty to protect parked vehicles and

their contents is consistent with this expectation. Thus, we hold that the operator of an enclosed garage is under a duty to exercise reasonable care to protect the parked cars and those items one would expect reasonably to find within them. In a modern society, where car radios and cassette players are common, it is reasonable to expect that a car will contain a small cassette player and cassettes. Thus, in this case the duty of the Authority extended to the cassettes and cassette player in the McGlynn vehicle as well as to the hubcaps and outside antenna of the Backer vehicle.

■ Sufficient performance of the duty to exercise reasonable care will vary in other kinds of parking lots and garages. The care due to one who parks and locks his own car differs from the care due to another who entrusts his car and keys to an attendant ("valet parking"). Due care may vary also if the parking facility is an unfenced lot, rather than an enclosed garage. In the final analysis, the exercise of reasonable care will depend on the totality of the circumstances pertaining to a specific parking facility. Thus, whether an operator has discharged its duty of reasonable care must be determined on a case-by-case basis after an evaluation of all of the relevant circumstances.

A further issue is whether and under what circumstances automobile owners who park their cars in an enclosed garage are entitled to a presumption of negligence. Generally, the customer is absent when the damage occurs, and the obligation to come forward with affirmative evidence of negligence could impose a difficult, if not insurmountable, burden.

In similar factual settings, other courts have stretched the concept of bailment to provide the customer with the benefit of a presumption. *See Palazzo v. Katz Parking Systems Inc.*, 64 *Misc.*2d 720, 721, 315 *N.Y.S.*2d 384, 385 (Civ.Ct.N.Y.1970) (bailment found although car owner retained keys in seven-story park and lock garage where claim stated "no car delivered without this claim check" because "[t]he existence of a bailment

. . . will depend on the intent—express or implied—of the parties to the transaction"); *Scruggs v. Dennis, supra,* 222 *Tenn.* at 718, 440 *S.W.*2d at 22 (implied bailment contract where car owner took ticket at entrance, parked and locked car and retained keys). *See also Central Parking System v. Miller, supra,* 586 *S.W.*2d at 263 (Sternberg, J. dissenting) (would imply bailment to a six-story park and lock garage with automatic ticket dispenser at entrance providing ticket stamped with time and date of entry).

In a bailment, the presumption of negligence is "imposed in part as a matter of policy, to compel persons in a position of special responsibility to disclose evidence within their control, under penalty of a procedural disadvantage in the case if they do not." *W. Prosser, supra,* § 38 at 210. *See, e. g., Kushner, supra,* 105 *N.J.Super.* at 212. The same policy considerations that support the presumption of negligence with a bailment also support a presumption of negligence in the enclosed garage context. Those policy considerations are: (1) the operator is under a duty to exercise reasonable care to protect the parker's property; (2) the operator controls access to the premises and (3) the parker is absent while the car is parked. We conclude that a presumption of negligence arises from damage to a car parked in an enclosed garage. *Garlock v. Multiple Parking Services, Inc.,* 103 *Misc.*2d 943, 955, 427 *N.Y.S.* 2d 670, 678 (City Ct.1980); *see also Gilder, supra,* 343 *A.*2d at 55; *Ellish, supra,* 42 *App.Div.* at 179, 180, 345 *N.Y.S.*2d at 655–656 (Shapiro, J. dissenting).

The initial effect of the presumption is to establish *prima facie* proof that the garage operator was negligent and that its negligence caused the damage to the parked automobile. The presumption shifts the burden of going forward to the garage operator to show that it was not negligent or that its negligence did not cause the damage. *See Bachman Chocolate Mfg. Co., supra,* 1 *N.J.* at 242. The introduction of contrary evidence rebuts the presumption of negligence, and the trier of

facts must resolve the issue of negligence by balancing the underlying facts and all reasonable inferences against the contrary evidence. *Evid.R.* 14 comment 1. *See Bachman Chocolate Mfg. Co., supra,* 1 *N.J.* at 243 (if the presumption is rebutted, the "case should be submitted to a jury unless there are no disputed facts or disputed inferences to be drawn from undisputed facts"). Although the contrary evidence rebuts the presumption, the underlying facts remain as support for an inference of negligence. *See Evid.R.* 14 comment 1; *W. Prosser, supra,* § 38 at 210 (when presumption rebutted "[a]ll that remains is whatever inference from ordinary experience is to be drawn from the facts"); 9 *J. Wigmore, Evidence* § 2491 at 288 (3 ed. 1940) (when the presumption is removed "the inference, as a matter of reasoning, may still remain").

In the cases before us, the Authority, as the owner and operator of a garage, controlled the premises. It had a duty to take reasonable measures to protect the parked vehicles and their reasonably expected contents from the criminal activity of others. In addition, the garage supervisor testified that employees of the Authority would have been present during the time the vandalism occurred. Under the circumstances, upon proof of damage, the Authority was obliged to come forward with proof that its negligence did not cause the loss or that it exercised due care. *Bachman Chocolate Mfg. Co., supra,* 1 *N.J.* at 242; *Rodgers v. Reid Oldsmobile, Inc.,* 58 *N.J.Super.* 375, 380 (App.Div.1959).

In *McGlynn,* the trial court instructed the jury that upon proof of damage, a presumption of negligence arose. Because there was some evidence as to the security measures actually taken during the time period in which McGlynn's vehicle was damaged, however, it is unclear whether the jury based its verdict on the failure of the Authority to rebut the presumption or upon an affirmative showing of negligence. In either event, the verdict is not against the weight of the evidence and does not constitute a miscarriage of justice. *R.* 2:10–1.

In *Backer*, the trial court found that the defendant had not rebutted the presumption and entered a judgment for plaintiff. We agree. We note further that the Authority did not present evidence of protective measures taken during the time Backer's vehicle was damaged.

The judgments of the Essex County District Court are affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*For reversal* —None.