SAVOY HOTEL CORP., a Tennessee Corporation, and Joe H. Baker and A. S. Weinbaum, Jr., individually and partners, d/b/a Seventh Avenue Garage, Plaintiffs-in-Error, v. MARVIN L. SPARKS, Defendant-in-Error.
—421 S.W.(2d) 98.

Middle Section. July 28, 1967.

Certiorari Denied by Supreme Court November 20, 1967.

538

James L. Roberts, of Farris, Evans & Evans, Nashville, for plaintiff in error, Savoy Hotel Corp.

Elkin Garfinkle, Nashville, for plaintiff in error, Joe H. Baker and A. S. Weinbaum, Jr.

J. Brad Reed, of Bass, Berry & Sims, and John J. Hollins, Nashville, for defendant in error, Marvin L. Sparks.

PURYEAR, J.   This suit involves the right of a guest in a hotel to recover from such hotel and a parking garage certain damages sustained as a result of the guest's automobile and certain items of property therein being stolen from such garage, while the guest was registered at such hotel.

For convenience, we will refer to the appellee herein as "the plaintiff;" to the Savoy Hotel Corporation as "the hotel" and to Joe H. Baker and A. S. Weinbaum, Jr., d/b/a Seventh Avenue Garage, as "the garage."

Plaintiff filed a declaration containing a single count in which he alleged that on March 26, 1963, he registered as a guest at the hotel and in consideration of the room rent paid, the hotel furnished parking service for his automobile at the garage; that after registering at the hotel plaintiff turned the custody of his automobile over to the agents, servants and employees of the hotel and the garage; that his automobile contained numerous items of property; that on March 27, 1963, plaintiff went to the garage to get his automobile, at which time the servants, agents and employees of the garage and hotel failed to deliver same to him and told him that it had been stolen.

The declaration further alleges that later, the automobile was returned to plaintiff but the various items of property therein had been stolen therefrom; that the agents, servants and employees of the garage and hotel were guilty of negligence in failing to properly guard and protect plaintiff's automobile and its contents and further alleging that the garage and hotel were bailees for hire

and their negligence proximately caused the loss sustained by plaintiff.

To this declaration the hotel filed a plea of not guilty and in said plea the hotel further relied upon the following defenses:

That it had not entered into any contract with plaintiff whereby it became responsible for his automobile or the contents thereof; that it provided a place for safekeeping of the property of its guests, but the plaintiff's property was not delivered to the hotel for such safekeeping, since the plaintiff chose to leave same in his automobile. The hotel further pled as a defense the fact that under the provisions of T.C.A. Section 62-704 its liability, if any, would be limited to $300.00.

The garage filed a general issue plea of not guilty and later filed an amended plea relying upon the defense that plaintiff was given by a representative of such garage a claim check which, on its face, limited its liability, of which limitation plaintiff had knowledge and was bound thereby.

There were two trials of the case before the Circuit Judge without the intervention of a jury, on the first of which trials, after hearing the proof and taking the case under advisement, the trial Court gave a judgment against the garage and hotel for $2,142.81.

Thereafter, upon motion for new trial, the Court set aside this judgment for the reason that the case had been taken under advisement and judgment entered more than sixty days after date of trial.

The cause was again tried at a later date, at which time, after hearing all of the proof, the trial Court gave

a judgment in favor of plaintiff and against the garage and hotel for $2,162.81.

Motions for new trial were filed by the garage and by the hotel, which motions were overruled, appeals to this Court were prayed and properly perfected and assignments of error have been filed.

## THE EVIDENCE

Of course, only the evidence heard upon the second trial of the case is before us. All of the evidence in the case consisted of the testimony of plaintiff, himself, and certain stipulations of counsel, from which we find the uncontroverted facts of the case to be as follows:

Counsel for the parties stipulated that at the time of plaintiff's loss he was a paying guest of the hotel and occupied a room in which there was posted a notice limiting the liability of the hotel as provided by Tennessee law where a safe or other convenient place in the hotel exists for the protection of property of guests; that the hotel did maintain such a place for baggage and other property; that the Seventh Avenue Garage was a trade name for the defendants, Baker and Weinbaum, who operated a garage business in a multi-story building on Seventh Avenue North, Nashville, Tennessee; that plaintiff parked his automobile in such garage on March 26, 1963; that the automobile was not returned to him when he called for it about 11:00 o'clock A.M. on March 27, 1963, but was recovered some days later by police in North Carolina; that the personal property in the automobile had been removed by thieves and the car had been damaged to the extent of $500.00.

Plaintiff testified that he came to Nashville on business with regard to the distribution of telephone directories

on March 26, 1963; that he saw a sign on the Savoy Hotel advertising free parking for guests; that he registered at the hotel and was advised there was a garage across the street with which arrangements had been made for guests to park and he drove his automobile to this garage; plaintiff further testified that when he entered the garage an attendant took charge of his automobile and he asked the attendant to lock it and give him the keys, since he had some valuable things in it, but the attendant replied that it would be necessary for the garage to keep the keys, but he would lock the automobile and leave the keys in the office; that the attendant gave him a claim check, but he did not read anything written or printed on the check until later when the automobile was reported stolen.

Plaintiff further testified that at about 11:00 o'clock the following morning, to-wit, March 27, 1963, he went to the garage for the purpose of getting his automobile and was charged thirty-five cents for overtime parking, since the free parking privilege expired at 9:00 o'clock A.M.; that the garage employees could not find his automobile and after they made a search for about forty-five minutes or an hour, he was informed that someone had broken into the garage at night and his automobile had been stolen; that the theft was reported to the Police Department and plaintiff's insurer and plaintiff gave the police a list of the items which were in the automobile, which list is made an exhibit to his testimony in this case.

Plaintiff then testified as to his opinion of the value of the items of the property in the automobile and that none of these items were recovered except some payment books which were found scattered along a highway somewhere in Alabama, which were sent back to him by the F. B. I.

Upon cross-examination, plaintiff testified that he had travelled for fifteen years and had parked his automobile frequently in parking garages.

Since his testimony on this particular aspect of the matter is most vital, we quote the pertinent portions thereof both from plaintiff's direct and cross-examinations:

"Q. What sort of check did he give you?

A. A little check with a number on the back of it or a number on the front of it, I don't know which.

Q. Did you read anything on it that it said?

A. No, not at the time, I did not.

Q. Did he call your attention to anything written on the check?

A. No, sir.

Q. Did he call your attention to any signs that may have been located in the garage?

A. No, sir." (B. of E. p. 7)

\*  \*  \*  \*  \*  \*

"Q. Now, you travel very extensively, do you not?

A. That is right.

Q. And have for how many years?

A. Fifteen years.

Q. And you park your car very often in the parking garages?

A. Yes.

Q. And you receive tickets from the garages?

544

A. That is true.

Q. And the tickets have releases on them releasing them, the parking garages, from liability, you know that, do you not?

A. I had very seldom ever read a ticket like that and I assume that is the right assumption.

Q. But you had read it?

A. Yes.

Q. You knew that was in there?

A. Yes.

Q. This is a copy of the one you received in this instance, and I will ask you to read that and see if that is not a copy of the one you received when you parked your car?

A. This, of course, I did not read when I left the car there, but it is the standard form that most garages use so far as the wording is concerned. This is the wording most garages use. I understand that.

Q. And you understood it at the time you received the ticket, didn't you?

A. No, I wouldn't say I understood it from your garage at all.

Q. You understood it from other garages?

A. That is true.

MR. GARFINKLE: I want to make this an exhibit.''
(B. of E. pp. 17-18)

At this point, counsel presented and there was filed in the record a claim check bearing No. 801 and having the following language printed thereon:

"WE CLOSE AT 11:00 P.M.

Not responsible for damage by fire, storm, theft accident nor for articles left in car. Cars left after closing time at owner's risk."

No question is made in this case about the garage being the agent for the hotel in the parking of plaintiff's automobile, but counsel for the hotel does contend that its relationship as bailee with the plaintiff as bailor terminated at 9:00 A.M. on March 27, 1963, because its guests had to pay the garage a fee for cars parked after that hour.

Plaintiff insists that his automobile and the contents thereof were not returned to him on March 27, 1963, and that only the automobile was later returned to him in a damaged condition, because of a theft of the automobile, which occurred during the night that he spent at the hotel as a guest thereof.

However, the hotel further contends there is no proof that the loss occurred prior to 9:00 A.M. March 27, 1963. On the other hand, counsel for plaintiff insists that the hotel's liability as bailee did not terminate at 9:00 A.M. March 27, 1963.

In our opinion, the facts in this case are such that it is not necessary for us to determine therefrom whether the hotel's liability as bailee terminated at 9:00 A.M. as the hotel contends. It is abundantly clear from the evidence in this case that the theft of the automobile and its con-

tents occurred during the night and certainly before 9:00 A.M. March 27, 1963.

With these two propositions out of the way, we will now proceed to discuss the general question of liability.

## ASSIGNMENTS OF ERROR

The garage has filed three assignments of error, all of which three raise the general proposition that the evidence preponderates against the judgment of the trial Court.

The hotel has filed two assignments of error, the first of which raises the general proposition that the evidence preponderates against the judgment of the trial Court and the second of which raises the proposition that the Court erred in failing to give application to Sections 62-703 through 62-706, T.C.A., so as to exempt the hotel from liability to plaintiff for loss of the personalty contained in his automobile.

## OUR CONCLUSIONS

We will proceed, first, to discuss all of the assignments of error filed by the garage and the first assignment filed by the hotel, since these assignments raise the general proposition that the evidence preponderates against the judgment of the trial Court.

Both the garage and the hotel urgently insist that since plaintiff admits the automobile and the contents were stolen, there is no liability, because liability for loss by theft was expressly excluded in the contract of bailment.

We recognize the general principle that liability of the bailee may be limited by contract between the parties but if such liability be limited in this case it must depend upon the exculpatory language contained and

printed on the claim check which was delivered to plaintiff by an attendant of the garage at the time the automobile was delivered to the garage.

The leading case cited on this question is Dodge v. Nashville, C. & St. L. Ry. Co., 142 Tenn. 20, 215 S.W. 274 (1919). In that case, the evidence disclosed the plaintiff deposited certain baggage with the attendant of a check room of the Railway Company and received a claim check therefor, upon which was printed in red letters the following language:

" 'Notice.—Not responsible for an amount to exceed ten dollars on any article covered by this check.' "

The evidence showed the undisputed value of such baggage to be $224.50, which amount was awarded to the plaintiff by the Chancery Court of Hamilton County.

The Railway contended that, on account of the foregoing exculpatory language, its liability was limited to ten dollars. In passing upon this question the Supreme Court said:

"In the case of Healy v. New York Central & H. R. R. Co., reported in 153 App. Div. 516, 138 N.Y.S. 287, and affirmed in 210 N.Y. 646, 105 N.E. 1086, it was held that one checking a hand bag in a parcel room in a railroad station, and receiving a check on the back of which in fine print was a provision that the depositor, in accepting said check, agreed not to hold the railroad company liable for more than $10, to which his attention was not called, could recover the real value of the hand bag. The majority opinion in that case, upon the question of the plaintiff's right to recover, said:

'The plaintiff having had no knowledge of the existence of the special contract limiting the liability of the

defendant to an amount not exceeding $10, and not being chargeable with such knowledge, the minds of the parties never met thereon, and the plaintiff cannot be deemed to have assented thereto, and is not bound thereby.'

Judge Houghton, who wrote a separate opinion in the case concurring in the result reached by the majority, bases his conclusion of liability upon the ground that the numbered check received by the plaintiff from the railroad company was a mere token to enable him to identify his baggage when called for, and that in no sense did he have any reason to believe that it embodied a contract exempting the company from liability, or limiting the amount thereof. Upon this point his opinion states:

'The business of checking hand baggage at railway stations has become a large and important one. It seems to me that any one in the ordinary course of business, checking his baggage at such a place, would regard the check received as a mere token to enable him to identify his baggage when called for, and that in no sense would he have any reason to believe that it embodied a contract exempting the bailee from liability or limiting the amount thereof. If the plaintiff knew that the defendant had limited its liability to $10, either by his attention being called to it or otherwise, then, of course, the law would deem him to have assented to it, so that a binding contract would be effected. If he did not know it, I think the law imposed no duty upon him to read his check to find whether or not there was a contract printed thereon, or that he was guilty of neglect in not so reading it, because he had no reason to apprehend that a contract was printed thereon.'

We think this statement of the law is sound and should control the case at bar. In the absence of notice to the complainant of the stipulation printed upon the check restricting the liability of the defendant, we do not think that he should be bound hereby." Dodge v. Nashville, C. & St. L. Ry. Co., supra, 142 Tenn. pp. 27, 28, 29, 215 S.W. p. 276

In American Jurisprudence we find the following statement on this question:

"* * * although there is authority apparently to the contrary, the trend of the more recent authorities toward the view that receipt from a garage keeper of the numbered identification slip for an automobile left at a garage or parking station does not bind the bailor as to provisions, purportedly limiting the bailee's liability, which are printed thereon, where his attention is not called to them and he has no actual knowledge at the time of the bailment that they are supposed to become part of the contract." Am.Jur.Vol. 24, page 496, Sec. 34 Garages, Parking Stations, and Liveries.

Passing for the moment, the proposition that this is a suit in which plaintiff contends the bailee was guilty of negligence which proximately caused the loss, we do not think the exculpatory language printed upon the claim check delivered to plaintiff formed a part of the contract of bailment.

The garage and hotel also insist there is no evidence the loss occurred as a proximate result of negligence upon the part of either of them.

Plaintiff insists that he has established his right to recover because of a statutory presumption of negligence

arising from Code Section 24-515, which provides as follows:

"24-515. *Negligence of bailee.*—In all actions by a bailor against a bailee for loss or damage to personal property, proof by the bailor that the property was delivered to the bailee in good condition and that it was not returned or redelivered according to the contract, or that it was returned or redelivered in a damaged condition, shall constitute prima facie evidence that the bailee was negligent, provided the loss or damage was not due to the inherent nature of the property bailed. [C.Supp.1950, sec. 9746.1.]"

This Code Section was interpreted by our Supreme Court in Morton v. Martin Aviation Corp., 205 Tenn. 41, 325 S.W.2d 524 (1959), in the following language:

"The presumption created by this statute is one made by law which creates an inference of a fact which is prima facie correct and will sustain the burden of evidence unless and until conflicting facts on the point are shown. Where conflicting facts on the point are shown the permissible deduction from this statutory legal presumption which is before the Court is one that the jury may accept or reject or accord such probative value as it desires, and such inference is evidence and remains in the case even though there is evidence opposed thereto with respect to the point involved. In other words this presumption is a prima facie proof of the fact presumed, and unless the fact thus established, prima facie, by legal presumption of its truth is disproved, it must stand as proved." Morton v. Martin Aviation Corp., supra, p. 50, 325 S.W.2d p. 528.

This Code Section was enacted by the Legislature in 1950, after many of the cases cited by counsel for the hotel and the garage were decided and we have found very few reported cases in this State in which a construction of the statute is involved.

There seems to be a wide divergence of opinion among the appellate courts of other States as to extent of the burden which is placed upon the bailee, where a prima facie case may be established by proof of delivery of goods to the bailee in good condition and failure to redeliver, or redelivery in damaged condition, but we think that in this case, much consideration should be given to the fact that the garage owner was either unwilling or unable to introduce any evidence to show or explain the circumstances of the theft.

The garage owner is supposed to have knowledge concerning matters solely within his control and under his supervision and, therefore, has the opportunity to escape responsibility by showing that the theft resulted without fault on his part.

■■ We think the better rule on the legal effect of establishing a prima facie case of negligence against the bailee is stated by the Court of Appeals of Illinois in Clemenson v. Whitney, 238 Ill.App. 308 (1925) in the following language:

"It is the contention of the bailee defendant, in the case at bar, that, although the plaintiff made out a prima facie case of negligence, by her showing that her car was delivered to the defendant, but that he failed to deliver the car back to her upon demand, he fully and successfully rebutted that presumption, merely by showing that the car had been stolen, and that there-

upon it devolved upon plaintiff, as a part of the burden resting upon her, to establish negligence on his part, and to show that the theft was caused by such negligence. This court has had occasion to consider that question before and has rendered decisions supporting the contention made. Nichols v. Union Stock Yards & Transit Co., 193 Ill.App. 14. (where the bailed goods had been destroyed by fire); Glende v. Wicker Park Garage, 198 Ill.App. 584 (where the bailed article was stolen). We have gone into this question again, in connection with the case at bar, and have come to the conclusion that the better reasoning and the weight of authority is that where the bailor makes out a prima facie case of negligence against the bailee, by showing that the goods bailed have not been returned on demand, such prima facie case is not overcome by a showing, on the part of the bailee, to the effect that the goods have been burned or otherwise destroyed or have been stolen, but before the bailor's prima facie case can be said to be overcome, the bailee must further produce evidence tending to prove that such burning or loss or theft was occasioned without his fault." Clemenson v. Whitney, supra, pp. 313, 314.

This same rule was stated by the Supreme Court of Minnesota in Central Mutual Insurance Co. v. Whetstone, 249 Minn. 334, 81 N.W.2d 849 (1957):

"It is settled law in this state that, where the bailee's liability depends upon the issue of his negligence, and the bailor has shown that the property involved was delivered to the bailee and has not been returned pursuant to the bailment agreement, or has been returned in a damaged condition, the bailee has the burden of showing that the loss or damage was not

caused by his negligence. It is not enough merely to show that the property bailed was stolen. The bailee must, in addition, establish that the theft was not occasioned by his negligent acts or omissions. Of course, if the evidence is so conclusive that ordinarily prudent men could not reasonably differ but could only find that due care was exercised, then the bailee must be found free from negligence as a matter of law." Central Mutual Ins. Co. v. Whetstone, supra p. 851, 249 Minn. p. 336.

In addition to the force of the presumption given by T.C.A. Section 24-515, the plaintiff's case is also reinforced by the following testimony of plaintiff:

"Q. Mr. Sparks, on the morning of March 27th when you went to pick up your car, were the keys to your car in the office in the garage?

A. No, sir.

Q. Did the people at the garage tell you where your keys were?

A. No, the keys were returned with the car twenty-two days later.

Q. You had specifically instructed the attendant at the garage to lock your car, did you not?

A. Yes, sir.

Q. He would lock the car and put the keys in the office?

A. That is what he said." (B. of E. pp. 26, 27)

This unexplained circumstance of the keys not being delivered to plaintiff at the time he called for his auto-

mobile and later delivered after it had been recovered, is sufficient circumstantial evidence from which we may reasonably infer that instead of the keys being left in the garage office, such keys were in the automobile at the time it was stolen.

In its second assignment of error, the hotel especially relies upon Sections 62-703 and 62-705, T.C.A.:

"62-703. *Safe for valuables of hotel guests—Immunity from liability for unchecked articles.*—When the proprietor of any hotel or inn shall provide a safe in the office in such hotel or inn, or other convenient place, for the safekeeping of any money, jewels, or ornaments belonging to the guests of such hotel or inn, or for any samples of merchandise of any kind carried by drummers or commercial travelers, and shall notify the guests thereof by posting a notice (stating the fact that in such safe or other convenient place money, jewels, ornaments, or samples may be deposited) in the rooms occupied by such guests, in a conspicuous manner, and if such guests shall neglect to deposit such money, jewels, ornaments, or samples of merchandise in such safe or other convenient place, the proprietor shall not be liable for any loss of such money, jewels, ornaments, or samples of merchandise sustained by such guest, by theft, or otherwise. [Acts 1921, ch. 49, sec. 1; Shan. Supp., sec. 3593; Code 1932 sec. 6680; C. Supp. 1950, sec. 6680]."

"62-705. *Checkroom for personal baggage—Immunity from liability for unchecked articles.*—When the proprietor of any hotel or inn shall provide a checkroom or other convenient storage place in his building for the checking, storage, and safekeeping of the personal

baggage, other than money, jewels, ornaments, and samples of merchandise carried by drummers or commercial travelers, or his guests, or those intending to become guests, and notifies the guests thereof by posting a notice in its lobby or office in a conspicuous manner, that such checkroom or other storage place has been provided, should any guest, or person intending to become a guest, neglect to deposit any such personal baggage other than money, jewels, ornaments or samples provided for in secs. 62-703 and 62-704, in said checkroom or storage place, and leave such baggage in any other place than a room assigned to such guests, said proprietor shall not be liable for the loss or theft thereof, unless the same was stolen by some employee of such inn or hotel; provided said hotel proprietor make no extra charge for storing or checking property. [Acts 1921, ch. 49, sec. 2; Shan. Supp., sec. 3593a1; Code 1932, sec. 6681; C. Supp.1950, sec. 6681.]."

■ It is stipulated that the hotel, in compliance with the foregoing statutes, provided a checkroom or other convenient place of storage for the checking, storage and safekeeping of the personal baggage of its guests and posted a notice to that effect in the room occupied by plaintiff. Therefore, we think the hotel's second assignment of error must be sustained.

■ Of course, these statutes do not relieve the hotel of liability for damage to plaintiff's automobile, because such liability is derivative, but the evidence in this case shows that the garage was designated as agent only for the purpose of parking the vehicles of the hotel's guests and not for the purpose of storing baggage and other personal property.

For the foregoing reasons, all of the assignments of error filed by the garage are overruled and assignment of error number one filed by the hotel is overruled.

The judgment against the hotel will be modified by reducing it to $500.00, the stipulated amount of damage to plaintiff's automobile, and as thus modified, the judgment of the trial Court is affirmed. The hotel and garage will pay all of the costs of this appeal.

Shriver, P. J., concurs.