**Bobby Joe RHODES, Plaintiff-Appellee,**

v.

**PIONEER PARKING LOT, INC.,
Defendant-Appellant.**

Supreme Court of Tennessee.

Nov. 19, 1973.

Goins, Gammon, Baker & Robinson, Chattanooga, for plaintiff-appellee.

Bates Bryan, Chattanooga, for defendant-appellant.

OPINION

W. M. LEECH, Special Justice.

Pioneer Parking Lot, Inc. has appealed from a judgment entered in the Circuit Court of Hamilton County awarding Bobby Joe Rhodes $2,263.00 as damages for the theft of his automobile from a parking lot operated by appellant. Appeal was made direct to this Court pursuant to § 16–408 T.C.A., because the case was finally determined in the lower court by a "method not involving review or determination of the facts."

Appellant operates a parking lot located on Chestnut Street in Chattanooga, Tennessee of the type commonly known as a "self-service Park & lock" operation. The ticket received by appellee when he parked his car contained the following language:

"NOTICE
THIS CONTRACT LIMITS OUR
LIABILITY - READ IT

WE RENT SPACE ONLY. No bailment is created and we are not responsi-

ble for loss of or damage to, car or contents. This ticket is sold subject to space being available and is not transferable."

A sign posted on the lot described the parking procedure as follows:

"SELF SERVICE
PARK & LOCK

1. Buy ticket before Parking

2. Place Ticket on Dash

3. Park & Lock Car

CARS WITHOUT VALIDATED TICKET WILL BE TOWED AWAY"

There are no restrictions or controls over entry or departure of vehicles or people to and from the parking lot. Moreover, there has never been any attendant to service or look after this lot. Although there is but one entrance which is also the exit, there are no cashiers on this lot.

On October 8, 1969 at about 12:00 o'clock noon, the plaintiff drove his 1968 Chevrolet Camaro onto the defendant's parking lot. At the entrance to this parking lot there is a ticket meter. Plaintiff placed fifty cents in the meter and the meter returned to him the previously set out ticket. Plaintiff then drove his car further into the lot and without any direction or supervision parked it himself; removed the keys from the ignition; placed his ticket on the dash in accordance with the instructions; and locked his car and left the lot keeping his keys himself. Subsequently, plaintiff returned to the parking lot to find that his car had been stolen. His car was later found in a stripped condition and as a result he brought this suit to recover the value of his car.

The trial judge found that the stipulated facts made out a bailor-bailee relationship between plaintiff and defendant and that plaintiff was entitled to recover the value of the car.

The only issue before this Court is whether the relationship between plaintiff and defendant constituted a bailment, so as to permit plaintiff to recover damages for the failure of defendant to redeliver plaintiff's car on demand.

■ A bailment is the delivery of personalty to another for a particular purpose or on mere deposit, on a contract express or implied, that after the purpose has been fulfilled, it shall be redelivered to the person who delivered it, or otherwise dealt with according to his direction or kept until he reclaims it. *See, e. g.,* Jackson v. Metropolitan Government of Nashville, 483 S.W.2d 92 (Tenn.1972).

■ The creation of a bailment in the absence of an express contract requires that possession and control over the subject matter pass from the bailor to the bailee. *In order to constitute a sufficient delivery of the subject matter there must be a full transfer, either actual or constructive, of the property to the bailee so as to exclude it from the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control thereof.* See Jackson v. Metropolitan Government of Nashville, supra, Scruggs v. Dennis, 222 Tenn. 714, 440 S.W.2d 20 (1969); Old Hickory Parking Corp. v. Alloway, 26 Tenn.App. 683, 177 S.W.2d 23 (1944). *See generally,* 8 Am.Jur.2d 960–61.

■ In parking lot and parking garage situations, a bailment is created where the operator of the lot or garage has knowingly and voluntarily assumed control, possession, or custody of the motor vehicle; if he has not done so, there may be a mere license to park or a lease of parking space. *See, e. g.,* Lewis v. Ebersole, 244 Ala. 200, 12 So.2d 543 (1943); Southeastern Fair Association v. Ford, 64 Ga.App. 871, 14 S.E. 2d 139 (1941). In Old Hickory Parking Corp. v. Alloway, supra, the court found a bailment where possession of the vehicle was actually surrendered to an attendant. Another factor used to determine whether the operator of the lot has assumed control is the surrender of the keys by the motorist to the operator. *See* Scruggs v.

Dennis, supra. Moreover, in the latter case the necessary possession and control were found where the car could not be taken from the parking garage without the presentation of a parking ticket and payment of the parking fee to an attendant-cashier. In addition, in Jackson v. Metropolitan Government of Nashville, supra, the plaintiff was permitted to pass a barricade and enter a parking lot on payment of a fee, and was then directed by an attendant into a parking spot, thus we found a bailment.

 In the case at bar, however, we find no evidence to justify a finding that the plaintiff delivered his car into the custody of the defendant, nor do we find any act or conduct upon the defendant's part which would justify a reasonable person believing that an obligation of bailment had been assumed by the defendant. To the contrary, the facts show that the plaintiff at no time left his car in defendant's possession and control. Plaintiff paid the designated parking fee by depositing the money in the ticket meter. He drove his car into the parking lot, undirected and unsupervised by defendant, and chose a parking space within the lot suitable to himself. Plaintiff then parked and locked the car, retaining the key. At no time did plaintiff come into contract with any of defendant's employees, nor was plaintiff required to contact an employee of the defendant on taking his car from the parking lot. It necessarily follows, therefore, that there was no bailor-bailee relationship established between the plaintiff and the defendant.

However, plaintiff argues that the statement "CARS WITHOUT VALIDATED TICKETS WILL BE TOWED AWAY" would lead the average person to believe that there would be some supervision of the vehicle while it was parked in the lot, and that such was sufficient to create an implied contract of bailment. We disagree. The clear meaning of the statement is that cars in the parking lot would be checked for the sole purpose of enforcing payment of the parking fee and not that the

parking lot operator was exercising dominion over all vehicles parked on the lot, especially where as in the case at bar the parking fee was paid. It results therefore that the judgment entered in the trial court is reversed and the case is dismissed.

DYER, C. J., McCANLESS and FONES, JJ., and JENKINS, Special Justice, concur.