CENTRAL PARKING SYSTEM, Movant,

v.

Stephen H. MILLER, Respondent.

Supreme Court of Kentucky.

July 3, 1979.

Kenneth F. Osborne, Louisville, for movant.

F. Larkin Fore, Louisville, for respondent.

Louis R. Straub, Louisville, amicus curiae.

STEPHENSON, Justice.

This case arose out of the thefts of wire wheels from Miller's car. The car was parked in a large self-service parking garage owned by Central Parking System. The parking garage is a self-service type operation where a ticket machine automatically gives a ticket to a driver before he enters the garage. The driver then parks in a place of his choice and leaves his car, taking his keys with him. The only employee on duty is the attendant who collects the money from the driver upon exiting. Miller parked his car in movant's garage following the above procedure on the three occasions when his wheels were stolen. After the thefts, Miller filed suit against Central Parking. The Jefferson Quarterly Court entered a judgment of $838.20 in favor of Miller. The Jefferson Circuit Court affirmed, basing its decision on the quarterly court's findings of fact and conclusions of law. The Court of Appeals affirmed. We reverse.

The Court of Appeals held that Central Parking was a bailee, relying on *Blackburn v. Depoyster*, 209 Ky. 105, 272 S.W. 398 (1925). *Blackburn* held that the garage keeper was a bailee for hire who was under a legal obligation to exercise such ordinary care as a man of reasonable prudence and discretion would exercise under like circumstances with respect to his own property. The facts in *Blackburn* were that an agreement existed whereby Blackburn was allowed to park in Depoyster's garage. On the night of the theft, the owner was not present when Blackburn parked his car in the garage. The court in holding that the garage keeper was a bailee for hire stated that the duty imposed on the garage keeper was similar to that imposed on a liveryman.

The standards that were applicable to a liveryman should not be applicable to a parking garage where hundreds of cars are parked daily. While it may have been that these standards were applicable to a parking garage in 1925, it is not practical to apply them to garages of today. There are more automobiles in existence today, more and larger parking facilities and easier access to these facilities as a result of automatic ticket machines and other technological advances. No longer is entry into a lot or garage and the parking of a car dependent upon the presence of the owner or an attendant or an express agreement between the garage and car owner. For these rea-

sons we hold that *Blackburn, supra*, is no longer applicable and that the facts in the case at bar do not create a bailment.

Therefore, Central Parking is not liable to Miller in the absence of negligence. This same conclusion, based on similar facts, was reached in *Ellish v. Airport Parking Co. of America, Inc.*, 42 A.D.2d 174, 345 N.Y.S.2d 650, app. dism. 33 N.Y.2d 764, 350 N.Y.S.2d 411, 305 N.E.2d 490 (Ct.App., 1973), aff'd, 34 N.Y.2d 882, 359 N.Y.S.2d 280, 316 N.E.2d 715 (Ct.App., 1974). Although this case involved the theft of an automobile from an airport's parking lot, the parking procedure was exactly the same as in this case. This court finds the reasoning in *Ellish, supra*, persuasive:

> We are of the opinion that liability should not be determined by ancient labels and characteristics not connected with present-day practices. It is one thing for the owner of a livery stable to have to explain the disappearance of a horse from its stall to the owner, but it is not at all the same for the operator of a parking lot at a busy airport to have to explain the disappearance from the lot of one of the thousands of cars parked there daily. Unless proof of negligence is present on the part of the operator of the lot, the risk of loss must be assumed by the owner of the automobile.

The effect of this holding is that the owner of the car must offer proof of specific acts of negligence by the operator or his employees if he is to recover for loss or damage. 38 Am.Jur.2d, Garages, etc., § 71. The trial court made no finding that Central Parking was negligent, holding only that there was a bailment created and Miller had met his burden of proof. However, as a result of our holding Miller must prove specific acts of negligence on the part of Central Parking in order to recover for his stolen wheels. In the absence of such evidence, Central Parking is not liable.

In conclusion when a person parks his automobile in a garage by receiving a ticket from an automated machine, choosing his own space and taking his keys with him, the garage is not a bailee and is not liable in the absence of negligence on its part.

The judgment of the circuit court and the opinion of the Court of Appeals are reversed.

All concur except STERNBERG, J., who dissents.

STERNBERG, Justice, dissenting.

The Central Parking System, movant herein, operates a six-story, self-parking garage adjoining the Legal Arts Building, Seventh and Market Streets, Louisville, Kentucky. Entrance is made through a designated opening in the building and, as the vehicle enters, an automatic ticket-dispensing machine provides a "ticket" which indicates the time and date the vehicle entered the garage. The driver may then select a parking space of his own choosing, lock his car, take his keys with him, and then exit by a doorway on each floor of the garage directly into the office building, or the car owner may exit on foot by walking out of the automobile entrance or exit way. As the automobile exits, it passes an attendant or a cashier's booth, at which point the driver pays the cashier a fee computed on the time the car was parked. The garage is patrolled three times daily by garage personnel.

In the instant case, the respondent, Stephen H. Miller, regularly parked his car in movant's garage and walked into the office building where he worked. On three separate occasions expensive wire wheels were stolen off of respondent's car. The movant denied liability for the theft of the wheels, and respondent filed suit against the garage in the Jefferson County Quarterly Court, where he recovered judgment in the sum of $838.20. The case was appealed to the Jefferson Circuit Court, where, based upon the record accumulated in the Quarterly Court, an award was made to respondent against movant in the sum of $854.97. On appeal to the Court of Appeals of Kentucky, the judgment of the Jefferson Circuit Court was affirmed. Movant's motion for discretionary review was granted and this court reverses. This writer dissents.

The issue is whether a contract of bailment is to be implied from the relationship between the parties. This court has stated that bailment,

" '. . . may be said to import a delivery of personal property by one person to another in trust for a specific purpose, with a contract, expressed or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the specific purpose is accomplished or kept until bailor claims it.' *Jensen & Eagle Ore. Co.*, 47 Colo. 306, 107 P. 259, 33 L.R.A. (N.S.) 681, 19 Ann.Cas. 519. . . ." *Commonwealth v. Polk*, 256 Ky. 100, 75 S.W.2d 761 (1934).

We have imposed the duty on the bailee "to exercise the utmost good faith, and . . . diligence in the performance of his duties." Id., 75 S.W.2d p. 764.

In order to determine whether a "bailment" relationship exists, the reasonable expectations of the parties are controlling. In other words, what protection was the automobile owner in this case entitled to believe existed under the individual circumstances of this parking arrangement? I believe that the automobile owner was entitled under the circumstances to expect that reasonable care would be utilized to prevent tampering with his automobile.

I cannot buy the argument made by the movant that to follow the reasoning of *Blackburn v. Depoyster*, 209 Ky. 105, 272 S.W. 398 (1925), puts us in the horse and buggy age. As a matter of fact, vehicles, by reason of the large numbers and limited public parking spaces, need more attention than in the good old horse and buggy days of 1925. *Depoyster* does not constitute the operator of a parking facility as a guarantor of the safety of the parking vehicle; it merely requires the operator of the parking lot "to exercise ordinary care to prevent such vehicles being stolen and carried away from the garage while in his keeping, and, if he fails to exercise such care, he is liable for the loss."

Counsel for the movant has taken solace in KRS 189.710. A casual reading of that statute manifests that it is not applicable. It applies to a situation where the keys are required to be left with the automobile and, under those conditions, fixes liability "for any loss or damage to such automobiles except such as is caused by persons or forces beyond the control of the operator and his employes." This statute does not intend to nor does it create or suggest a liability of a parking lot operator under conditions not encompassed by the statute. In other words, the statute does not affect the common law liability of the parking lot operator. This liability is considered and well stated in *Depoyster*.

In *Parking Management, Inc. v. Gilder*, (D.C.App.) 343 A.2d 51 (1975), the Court of Appeals of the District of Columbia considered circumstances similar to the instant case. In the course of the opinion it is written:

"The car owner was entitled under the circumstances to expect that reasonable care would be utilized to prevent tampering with his auto;

. . . . .

While there has been a tendency to consider a showing of a 'park and lock' arrangement as creating a lease agreement we doubt the sophistication of this doctrine. Unlike the usual tenant of realty, the car owner has utterly no control of the so-called leased space as he is by definition always absent and helpless to protect his property, for all practical purposes. There is in most instances no fixed term, the duration of the parking being usually at the option of the car owner. Lastly, the car owner may not remove the car until the parking fee is paid.

The owner of the car cannot observe and protect the car since he is always absent from it. It is the operator, not the car owner, who is in a position to have the superior knowledge.

We do not consider the law of landlord-tenant to be an apt doctrine to apply in such cases; and we think the time has come to reject that outmoded theory with its unrealistic confines in this type of

application. Nor do we think mechanical labels should be applied to the relationship in 'park and lock' arrangements.

.　.　.　.　.

On the facts here presented, we believe an operator may be required to exercise reasonable care to avoid malicious mischief to, or theft of, vehicles parked on a commercial parking lot (a going concern), even though the arrangement was 'park and lock.' The car owner was necessarily absent when the car damage occurred and should not be disadvantaged as a matter of law because of this reality. We do not feel that a car owner may fairly be regarded as a virtual stranger to the lot operator except for the payment of a parking fee.

.　.　.　.　.

The circumstances here were sufficient to create an implied duty of reasonable care by the lot operator to protect the car from malicious mischief, and we conclude the finding by the trial court that a violation of that duty occurred was not clearly erroneous. . . ."

*Scruggs v. Dennis*, Tenn., 440 S.W.2d 20 (1969), presents a factual situation similar to those presented in the instant case. Scruggs had regularly parked his car in the respondent's parking garage. On March 6, 1967, when Scruggs returned to receive his car, it was not to be found. Two weeks later the car was recovered by the police. The question presented was whether a bailment is to be implied from the relationship between the parties. The trial court held in the affirmative and entered judgment for Scruggs against the parking garage for $921.65. This judgment was reversed by the Court of Appeals of Tennessee. On appeal to the Supreme Court of Tennessee, the action of the Court of Appeals was reversed and the judgment of the trial court was affirmed. The case turned upon the question of whether a bailment is to be implied from the relationship between the parties. The Supreme Court said:

　" 'In the instant case when complainant turned her automobile over to defendant's servant for safekeeping, the bailment for hire contract was impliedly created, defendant bailee promising to redeliver the vehicle in reasonably good condition on the demand of complainant, or to her order, and to no one else. To do that was just as much a part of the contract of bailment as if it had been solemnly written out and signed by both parties.'

.　.　.　.　.

Indeed, it is our view that to embrace the theory of respondent garage in this case would be tantamount to nothing more or less than condonation of a reduction of storage operation for hire to a subterfuge."

I would hold that even though this is a "self-parking" or "park and lock" arrangement, the automobile owner was entitled to reasonably expect that the garage operator would utilize reasonable care to prevent tampering with the automobile. In accordance with such circumstances, the automobile owner and garage operator have impliedly entered into a contract of bailment, which was breached upon the failure of the garage operator to return the bailed automobile in as good condition as that in which it was left. This is not to say that the garage operator must be all things to all persons who occupy the parking garage. I would hold that the relationship of bailor and bailee exists and that the keeper of the parking lot must exercise the care which an ordinary prudent person would exercise under like and similar circumstances for the preservation of similar property. Ordinarily, this is a jury question and the disposition of the issue may depend upon the facts and circumstances in each case. I believe each case must stand on its own bottom, and in the instant case a jury question *is* made as to whether the movant, operator of the parking garage, exercised ordinary care.