Betty J. ALLEN, Plaintiff-Appellee,

v.

HYATT REGENCY—NASHVILLE HOTEL, Defendant-Appellant.

Supreme Court of Tennessee,
at Nashville.

March 26, 1984.
Rehearing Denied April 23, 1984.

Laurence M. Papel, Taylor, Schlater, Lassiter, Tidwell & Trentham, Nashville, for plaintiff-appellee.

James R. Kniffen, Barnett & Alagia, Nashville, for defendant-appellant.

James I. Vance Berry, Peter H. Curry, Nashville, amicus curiae Allright Parking, Inc. and Central Parking, Inc.

OPINION

HARBISON, Justice.

In this case the Court is asked to consider the nature and extent of the liability of the operator of a commercial parking garage for theft of a vehicle during the absence of the owner. Both courts below, on the basis of prior decisions from this state, held that a bailment was created when the owner parked and locked his vehicle in a modern, indoor, multi-story garage operated by appellant in conjunction with a large hotel in downtown Nashville. We affirm.

There is almost no dispute as to the relevant facts. Appellant is the owner and operator of a modern high-rise hotel in Nashville fronting on the south side of Union Street. Immediately to the rear, or south, of the main hotel building there is a multi-story parking garage with a single entrance and a single exit to the west, on Seventh Avenue, North. As one enters the parking garage at the street level, there is a large sign reading "Welcome to Hyatt Regency-Nashville." There is another Hyatt Regency sign inside the garage at street level, together with a sign marked "Parking." The garage is available for parking by members of the general public as well as guests of the hotel, and the public are invited to utilize it.

On the morning of February 12, 1981, appellee's husband, Edwin Allen, accompanied by two passengers, drove appellee's new 1981 automobile into the parking garage. Neither Mr. Allen nor his passengers intended to register at the hotel as a guest. Mr. Allen had parked in this particular garage on several occasions, however, testifying that he felt that the vehicle would be safer in an attended garage than in an unattended outside lot on the street.

The single entrance was controlled by a ticket machine. The single exit was controlled by an attendant in a booth just opposite to the entrance and in full view thereof. Appellee's husband entered the garage at the street level and took a ticket which was automatically dispensed by the machine. The machine activated a barrier gate which rose and permitted Mr. Allen to enter the garage. He drove to the fourth floor level, parked the vehicle, locked it, retained the ignition key, descended by elevator to the street level and left the garage. When he returned several hours later, the car was gone, and it has never been recovered. Mr. Allen reported the theft to the attendant at the exit booth, who stated, "Well, it didn't come out here." The attendant did not testify at the trial.

Mr. Allen then reported the theft to security personnel employed by appellant, and subsequently reported the loss to the police. Appellant regularly employed a number of security guards, who were dressed in a distinctive uniform, two of whom were on duty most of the time. These guards patrolled the hotel grounds and building as well as the garage and were instructed to make rounds through the garage, although not necessarily at specified intervals. One of the security guards told appellee's husband that earlier in the day he had received the following report:

"He said, 'It's a funny thing here. On my report here a lady called me somewhere around nine-thirty or after and said that there was someone messing with a car.'"

The guard told Mr. Allen that he closed his office and went up into the garage to investigate, but reported that he did not find anything unusual or out of the ordinary.

Customers such as Mr. Allen, upon entering the garage, received a ticket from the dispensing machine. On one side of this ticket are instructions to overnight guests to present the ticket to the front desk of the hotel. The other side contains instructions to the parker to keep the ticket and

that the ticket must be presented to the cashier upon leaving the parking area. The ticket states that charges are made for the use of parking space only and that appellant assumes no responsibility for loss through fire, theft, collision or otherwise to the car or its contents. The ticket states that cars are parked at the risk of the owner, and parkers are instructed to lock their vehicles.[1] The record indicates that these tickets are given solely for the purpose of measuring the time during which a vehicle is parked in order that the attendant may collect the proper charge, and that they are not given for the purpose of identifying particular vehicles.

The question of the legal relationship between the operator of a vehicle which is being parked and the operator of parking establishments has been the subject of frequent litigation in this state and elsewhere. The authorities are in conflict, and the results of the cases are varied.[2]

It is legally and theoretically possible, of course, for various legal relationships to be created by the parties, ranging from the traditional concepts of lessor-lessee, licensor-licensee, bailor-bailee, to that described in some jurisdictions as a "deposit."[3] Several courts have found difficulty with the traditional criteria of bailment in analyzing park-and-lock cases. One of the leading cases is *McGlynn v. Parking Authority of City of Newark*, 86 N.J. 551, 432 A.2d 99 (1981). There the Supreme Court of New Jersey reviewed numerous decisions from within its own state and from other jurisdictions, and it concluded that it was more "useful and straightforward" to consider the possession and control elements in defining the duty of care of a garage operator to its customers than to consider them in the context of bailment. That Court concluded that the "realities" of the relationship between the parties gave rise to a duty of reasonable care on the part of operators of parking garages and parking lots. It further found that a garage owner is usually better situated to protect a parked car and to distribute the cost of protection through parking fees. It also emphasized that owners usually expect to receive their vehicles back in the same condition in which they left them and that the imposition of a duty to protect parked vehicles and their contents was consistent with that expectation. The Court went further and stated that since the owner is ordinarily absent when theft or damage occurs, the obligation to come forward with affirmative evidence of negligence could impose a difficult, if not insurmountable, burden upon him. After considering various policy considerations, which it acknowledged be the same as those recognized by courts holding that a bailment is created, the New Jersey Court indulged or authorized a presumption of negligence from proof of damage to a car parked in an enclosed garage. 432 A.2d at 105.[4]

Although the New Jersey Court concluded that a more flexible and comprehensive approach could be achieved outside of traditional property concepts, Tennessee courts generally have analyzed cases such as this in terms of sufficiency of the evidence to create a bailment for hire by implication. We believe that this continues to be the majority view and the most satisfactory and realistic approach to the problem, unless the parties clearly by their conduct or by express contract create some other relationship.

The subject has been discussed in numerous previous decisions in this state. One of the leading cases is *Dispeker v. New Southern Hotel Co.*, 213 Tenn. 378, 373

---

1. It is not insisted that the language of the ticket is sufficient to exonerate appellant, since the customer is not shown to have read it or to have had it called to his attention. See *Savoy Hotel Corp. v. Sparks*, 57 Tenn.App. 537, 421 S.W.2d 98 (1967).

2. See *Annot.* 13 A.L.R.4th 359 (1982); 7 A.L.R.3d 927 (1966).

3. See *Gauthier v. Allright New Orleans, Inc.*, 417 So.2d 375 (La.App.1982).

4. Other courts, declining to find a bailment, have onerated the customer with proving negligence. *E.g., Central Parking System v. Miller*, 586 S.W.2d 262 (Ky.1979).

S.W.2d 904 (1963). In that case the guest at a hotel delivered his vehicle to a bellboy who took possession of it and parked it in a lot adjoining the hotel building. The owner kept the keys, but the car apparently was capable of being started without the ignition key. The owner apparently had told the attendant how to so operate it. Later the employee took the vehicle for his own purposes and damaged it. Under these circumstances the Court held that a bailment for hire had been created and that upon proof of misdelivery of the vehicle the bailee was liable to the customer.

In the subsequent case of *Scruggs v. Dennis*, 222 Tenn. 714, 440 S.W.2d 20 (1969), upon facts practically identical to those of the instant case, the Court again held that an implied bailment contract had been created between a customer who parked and locked his vehicle in a garage. Upon entry he received a ticket dispensed by a machine, drove his automobile to the underground third level of the garage and parked. He retained his ignition key, but when he returned to retrieve the automobile in the afternoon it had disappeared. It was recovered more than two weeks later and returned to the owner in a damaged condition.

In that case the operator of the garage had several attendants on duty, but the attendants did not ordinarily operate the parked vehicles, as in the instant case.[5]

Although the Court recognized that there were some factual differences between the *Scruggs* case and that of *Dispeker v. New Southern Hotel Co., supra,* it concluded that a bailment had been created when the owner parked his vehicle for custody and safe keeping in the parking garage, where there was limited access and where the patron had to present a ticket to an attendant upon leaving the premises.

A bailment relationship was also found in *Jackson v. Metropolitan Government of Nashville,* 483 S.W.2d 92 (Tenn.1972), when faculty members of a high school conducted an automobile parking operation for profit upon the high school campus. A customer who parked his vehicle there was allowed recovery for theft, even though he had parked the vehicle himself after paying a fee, had locked the vehicle and had kept the keys.

On the contrary, in the case of *Rhodes v. Pioneer Parking Lot, Inc.,* 501 S.W.2d 569 (Tenn.1973), a bailment was found not to exist when the owner left his vehicle in an open parking lot which was wholly unattended and where he simply inserted coins into a meter, received a ticket, then parked the vehicle himself and locked it.

Denying recovery, the Court said:

"In the case at bar, however, we find no evidence to justify a finding that the plaintiff delivered his car into the custody of the defendant, nor do we find any act or conduct upon the defendant's part which would justify a reasonable person believing that an obligation of bailment had been assumed by the defendant." 501 S.W.2d at 571.

In the instant case, appellee's vehicle was not driven into an unattended or open parking area. Rather it was driven into an enclosed, indoor, attended commercial garage which not only had an attendant controlling the exit but regular security personnel to patrol the premises for safety.

Under these facts we are of the opinion that the courts below correctly concluded that a bailment for hire had been created, and that upon proof of nondelivery appellee was entitled to the statutory presumption of negligence provided in T.C.A. § 24–5–111.

We recognize that there is always a question as to whether there has been sufficient delivery of possession and control to create a bailment when the owner locks a vehicle and keeps the keys. Nevertheless, the realities of the situation are that the operator of the garage is, in circumstances like those shown in this record, expected to

---

5. Appellant's employees occasionally parked the vehicles of patrons who were handicapped and under other unusual circumstances.

provide attendants and protection. In practicality the operator does assume control and custody of the vehicles parked, limiting access thereto and requiring the presentation of a ticket upon exit. As stated previously, the attendant employed by appellant did not testify, but he told appellee's husband that the vehicle did not come out of the garage through the exit which he controlled. This testimony was not amplified, but the attendant obviously must have been in error or else must have been inattentive or away from his station. The record clearly shows that there was no other exit from which the vehicle could have been driven.

Appellant made no effort to rebut the presumption created by statute in this state (which is similar to presumptions indulged by courts in some other jurisdictions not having such statutes). While the plaintiff did not prove positive acts of negligence on the part of appellant, the record does show that some improper activity or tampering with vehicles had been called to the attention of security personnel earlier in the day of the theft in question, and that appellee's new vehicle had been removed from the garage by some person or persons unknown, either driving past an inattentive attendant or one who had absented himself from his post, there being simply no other way in which the vehicle could have been driven out of the garage.

Under the facts and circumstances of this case, we are not inclined to depart from prior decisions or to place the risk of loss upon the consuming public as against the operators of commercial parking establishments such as that conducted by appellant. We recognize that park-and-lock situations arise under many and varied factual circumstances. It is difficult to lay down one rule of law which will apply to all cases. The expectations of the parties and their conduct can cause differing legal relationships to arise, with consequent different legal results. We do not find the facts of the present case, however, to be at variance with the legal requirements of the traditional concept of a bailment for hire. In our opinion it amounted to more than a mere license or hiring of a space to park a vehicle, unaccompanied by any expectation of protection or other obligation upon the operator of the establishment.

The judgment of the courts below is affirmed at the cost of appellant. The cause will be remanded to the trial court for any further proceedings which may be necessary.

FONES, C.J., and COOPER, J., concur.

DROWOTA, J., files dissenting opinion, joined therein by BROCK, J.

DROWOTA, Justice, dissenting.

In this case we are asked to consider the nature and extent of liability of the operator of a commercial "park and lock" parking garage. In making this determination, we must look to the legal relationship between the operator of the vehicle and the operator of the parking facility. The majority opinion holds that a bailment contract has been created, and upon proof of non-delivery Plaintiff is entitled to the statutory presumption of negligence provided in T.C.A. § 24–5–111. I disagree, for I find no bailment existed and therefore the Plaintiff does not receive the benefit of the presumption. Consequently, the Plaintiff had the duty to prove affirmatively the negligence of the operator of the parking facility and this Plaintiff failed to do.

The majority opinion states that "courts have found difficulty with the traditional criteria of bailment in analyzing park and lock cases." The majority discusses the case of *McGlynn v. Parking Authority of City of Newark*, 86 N.J. 551, 432 A.2d 99 (1981), which suggests that bailment is an outmoded concept for analyzing parking lot and garage cases. In *Garlock v. Multiple Parking Services, Inc.*, 103 Misc.2d 943, 427 N.Y.S.2d 670, 677, 13 A.L.R.4th, 428 (1980), the court stated that "the 'bailment theory' as a basis for recovery in parking lot cases is no longer appropriate." That court concluded that since the concept of bailment is no longer a viable theory in application to a very real modern problem

that the proper standard to be followed in such cases is "reasonable care under the circumstances whereby foreseeability shall be a measure of liability." *Id.* 427 N.Y. S.2d at 678.

Even though some courts now suggest that the theory of bailment is an archaic and inappropriate theory upon which to base liability in modern park and lock cases, the majority opinion states that "Tennessee courts generally have analyzed cases such as this in terms of sufficiency of the evidence to create a bailment for hire by implication," and concludes that this is "the most satisfactory and realistic approach to the problem." I do not disagree with the longstanding use of the bailment analysis in this type of case. I do disagree, however, with the majority's conclusion that a bailment for hire has been created in this case.

The record shows that upon entering this parking garage a ticket, showing time of entry, is automatically dispensed by a machine. The ticket states that charges are made for the use of a parking space only and that the garage assumes no responsibility for loss to the car or its contents. The ticket further states that cars are parked at the risk of the owner, and parkers are instructed to lock their vehicles. The majority opinion points out that it is not insisted that this language on the ticket is sufficient to exonerate the garage, since the customer is not shown to have read it or to have had it called to his attention. *Savoy Hotel Corp. v. Sparks,* 57 Tenn.App. 537, 421 S.W.2d 98 (1967). The ticket in no way identifies the vehicle, it is given solely for the purpose of measuring the length of time during which the vehicle is parked in order that a proper charge may be made.

In this case Mr. Allen, without any direction or supervision, parked his car, removed his keys, and locked the car and left the parking garage having retained his ignition key. The presentation of a ticket upon exit is for the sole purpose of allowing the cashier to collect the proper charge. The cashier is not required to be on duty at all times. When no cashier is present, the exit gate is opened and no payment is required.[1] As the majority opinion states, the ticket is "not given for the purpose of identifying particular vehicles." The ticket functioned solely as a source of fee computation, not of vehicle identification.

The majority opinion states: "[W]e do not find the facts of the present case to be at variance with the legal requirements of the concept of a bailment for hire." I must disagree, for I feel the facts of the present case are clearly at variance with what I consider to be the legal requirements of the traditional concept of a bailment for hire.

Bailment has been defined by this Court in the following manner:

The creation of a bailment in the absence of an express contract requires that possession and control over the subject matter pass from the bailor to the bailee. In order to constitute a sufficient delivery of the subject matter there must be a full transfer, either actual or constructive, of the property to the bailee so as to exclude it from the possession of the owner and all other persons and give to the bailee, for the time being, the sole custody and control thereof. *See Jackson v. Metropolitan Government of Nashville, supra, Scruggs v. Dennis,* 222 Tenn. 714, 440 S.W.2d 20 (1969); *Old Hickory Parking Corp. v. Alloway,* 26 Tenn.App. 683, 177 S.W.2d 23 (1944). *See generally,* 8 Am.Jur.2d 960–61.

In parking lot and parking garage situations, a bailment is created where the operator of the lot or garage has knowingly and voluntarily assumed control, possession, or custody of the motor vehicle; if he has not done so, there may be a mere license to park or a lease of parking space. *See, e.g., Lewis v. Ebersole,* 244 Ala. 200, 12 So.2d 543 (1943); *Southeastern Fair Association v. Ford,* 64 Ga. App. 871, 14 S.E.2d 139 (1941).

---

**1.** Between one or two in the morning and six or seven a.m., the garage is entirely open without a cashier to collect parking fees. During the day if the cashier leaves his or her post on a break, the exit gate is opened and the vehicle owner may exit without payment.

*Rhodes v. Pioneer Parking Lot, Inc.*, 501 S.W.2d 569, 570 (Tenn.1973).

From its earliest origins, the most distinguishing factor identifying a bailment has been delivery. Our earliest decisions also recognize acceptance as a necessary factor, requiring that possession and control of the property pass from bailor to bailee, to the exclusion of control by others. The test thus becomes whether the operator of the vehicle has made such a delivery to the operator of the parking facility as to amount to a relinquishment of his exclusive possession, control, and dominion over the vehicle so that the latter can exclude it from the possession of all others. If so, a bailment has been created.

When the automobile began replacing the horse and buggy, our courts allowed bailment law to carry over and govern the parking of vehicles. In cases such as *Old Hickory Parking Corp. v. Alloway*, 177 S.W.2d 23 (Tenn.App.1943), and *Savoy Hotel v. Sparks*, 421 S.W.2d 98 (Tenn.App. 1967), where the operator of the vehicle left his vehicle with an attendant and left the keys for the attendant to move the vehicle as he wished, the bailment relationship was evident for we had a clear delivery, acceptance of possession, control, and exercise of dominion over the vehicle—all the traditional elements of a bailment. In *Dispeker v. New Southern Hotel Company*, 213 Tenn. 378, 373 S.W.2d 904 (1963), a bellboy parked plaintiff's car, plaintiff retained the keys but explained to the bellboy that the car could be operated without the key, and apparently showed him how to operate it. The bellboy went off duty, then returned and stole the car. Once again, the traditional elements of delivery and control were present.

These cases involving parking attendants and personalized service have caused us no problems. The problem arises in this modern era of automated parking, when courts have attempted to expand the limits of existing areas of the law to encompass technological and commercial advances. Such is the case of *Scruggs v. Dennis*, 440 S.W.2d 20 (Tenn.1969), relied upon in the majority opinion. In *Scruggs*, as in this case, the entire operation is automated, with the exception of payment upon departure. The operation bears little, if any, resemblance to the circumstances found in *Old Hickory Parking Corp.*, *Savoy Hotel*, and *Dispeker*. Yet the Court in *Scruggs*, in quoting extensively from the *Dispeker* opinion, states that "There are some minute differences of fact ..." *Id.*, 440 S.W.2d at 22. As pointed out above, the differences of fact in *Dispeker* are not minute or so similar as the *Scruggs* court would suggest. Delivery, custody and control are clearly present in *Dispeker*. I fail to find such delivery, custody and control in *Scruggs* or in the case at bar. In *Dispeker*, the vehicle was actually taken from the owner by an attendant. I believe the *Scruggs* court and the majority opinion today attempt to apply bailment law in situations where there is not a true bailment relationship.

The *Scruggs* opinion was recently cited in a dissenting opinion in Kentucky where the plaintiff entered a six-story, self-parking garage in downtown Louisville. The only employee on duty was the attendant who collected the money from the driver upon exiting. The garage was patrolled three times daily by garage personnel. The Kentucky Supreme Court chose not to follow the *Scruggs* rationale and held "when a person parks his automobile in a garage by receiving a ticket from an automated machine, choosing his own space and taking his keys with him, the garage is not a bailee and is not liable in the absence of negligence on its part." *Central Parking System v. Miller*, 586 S.W.2d 262, 263 (Ky. 1979).

The difficulty in these types of cases seems to arise when the traditional elements of bailment are missing and courts must determine whether there is an implied bailment created by implication from the surrounding circumstances and the conduct of the parties. In *Jackson v. Metropolitan Government of Nashville*, 483 S.W.2d 92 (Tenn.1972), the Court based its opinion on the finding that the Defendants, by their

conduct, "impliedly promised to use ordinary and reasonable care to preserve the property during the term of the bailment and to return the bail property to complainant on demand or to his order." *Id.*, at 95.

The majority opinion "recognize[s] that there is always a question as to whether there has been sufficient delivery of possession and control to create a bailment when the owner locks a vehicle and keeps the keys." The majority finds that "in practicality the operator does assume control and custody of the vehicles parked, limiting access thereto and requiring the presentation of a ticket upon exit." The majority opinion, as did the *Scruggs* court, finds custody and control implied because of the limited access and because "the presentation of a ticket upon exit" is required. I cannot agree with this analysis as creating a bailment situation. I do not believe that based upon the fact that a ticket was required to be presented upon leaving, that this factor created a proper basis upon which to find a bailment relationship. The ticket did not identify the vehicle or the operator of the vehicle, as do most bailment receipts. The cashier was not performing the traditional bailee role or identifying and returning a particular article, but instead was merely computing the amount owed and accepting payment due for use of a parking space. I do not believe the Defendant exercised such possession and control over Plaintiff's automobile as is necessary in an implied bailment.

As recently stated in *Merritt v. Nationwide Warehouse Co., Ltd.*, 605 S.W.2d 250, 253 (Tenn.App.1980), "Such full delivery must be made as will entitle the bailee to exclude the possession of all other persons and put him in sole custody and control." The full transfer of possession and control, necessary to constitute delivery, should not be found to exist simply by the presentation of a ticket upon exit. In the case at bar, I find no such delivery and relinquishment of exclusive possession and control as to create a bailment. Plaintiff parked his car, locked it and retained the key. Certainly Defendant cannot be said to have sole custody of Plaintiff's vehicle, for Defendant could not move it, did not know to whom it belonged, and did not know when it would be reclaimed or by whom. Anyone who manually obtained a ticket from the dispenser could drive out with any vehicle he was capable of operating. Also, a cashier was not always on duty. When on duty, so long as the parking fee was paid—by what means could the Defendant reasonably exercise control? The necessary delivery and relinquishment of control by the Plaintiff, the very basis upon which the bailment theory was developed, is missing.

We should realize that the circumstances upon which the principles of bailment law were established and developed are not always applicable to the operation of the modern day automated parking facility. The element of delivery, of sole custody and control are lacking in this case.

I am authorized to state that BROCK, J., joins with me in this dissent.